**STATE of Missouri, Respondent,**

v.

**William T. MORRISON, Appellant.**

**No. WD 64025.**

Missouri Court of Appeals, Western District.

Sept. 6, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 1, 2005.

William B. Gaddy, Kansas City, MO, for Appellant.

Deborah Daniels, Jefferson City, MO, for Respondent.

Before SMART, P.J., HOLLIGER and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

William Morrison challenges the sufficiency of the evidence to support his convictions for involuntary manslaughter, felony assault, and leaving the scene of an accident. He also contends the trial court plainly erred in accepting his waiver of a jury trial. We find no error and affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

Around midnight on August 8, 2001, William Morrison was driving eastbound on 23rd Street in Kansas City, Missouri. His vehicle was traveling at least seventy-two miles per hour in a zone with a posted speed limit of forty-five miles per hour. Morrison observed a Ford Explorer approximately a quarter mile to half a mile ahead of him, also heading eastbound. Morrison maintained his excessive speed until he was thirty-five feet directly behind the Ford Explorer. At that point, Morrison applied the brakes and his vehicle began to skid. His vehicle struck the rear of the Explorer, causing it to flip over and roll two to three times off the roadway. The driver and a passenger in the Explorer were injured. Another passenger, who was pinned underneath the Explorer, was pronounced dead at the scene.

Jacob Bliss witnessed the accident and stopped to provide assistance. Morrison was bleeding but told Bliss that he was okay. Bliss saw Morrison open the trunk of his vehicle to gather papers. Bliss also heard one of the occupants of the Explorer speak to Morrison about the accident, but Morrison did not otherwise approach the Explorer.

Anna Kankey drove by the scene and stopped when she saw Morrison, whom she knew from a recent relationship when they lived together. Kankey told Morrison she would take him to the hospital because he was bleeding. Morrison got in Kankey's car but then refused to be taken to the hospital. Kankey drove to her home, where Morrison retrieved a truck he had left there at an earlier date. Morrison drove to another friend's home, parked the truck in the garage, and left the home in a different car. Morrison checked into a motel and stayed the night.

In September 2001, on the advice of his attorney, Morrison turned himself in at the police station. He was charged with one count of involuntary manslaughter, two counts of second-degree felony assault, one count of leaving the scene of a motor vehicle accident, and one count of driving with a revoked license. After waiving his right to a jury trial, Morrison was convicted of involuntary manslaughter, third-degree assault, second-degree assault, and leaving the scene of a motor vehicle accident. The court sentenced him to seven years on Count I (involuntary manslaughter), one year on Count II (third-degree assault) concurrent to Count I, four years on Count III (second-degree assault) consecutive to Counts I and II, and four years on Count IV (leaving the scene of an accident) consecutive to Counts I, II, and III, for a total prison term of fifteen years.

## SUFFICIENCY OF THE EVIDENCE

In Points I and II of his appeal, Morrison contends the evidence was insufficient to support his convictions for involuntary manslaughter, two counts of felony assault, and leaving the scene of an accident. Our review of these points is limited to a determination of whether there was sufficient evidence from which a reasonable trier of fact could have found Morrison guilty beyond a reasonable doubt. *State v. Villanueva,* 147 S.W.3d 126, 128 (Mo.App.2004). We must accept as true all of the evidence and inferences favorable to the State and disregard all evidence and inferences to

the contrary, giving great deference to the trier of fact. *Id.*

■ Morrison first argues the State failed to present any evidence of recklessness to support the convictions for involuntary manslaughter, third-degree assault, and second-degree assault. Citing *State v. Herring*, 502 S.W.2d, 405, 409 (Mo.App. 1973), he contends that his excessive speed alone was insufficient to prove reckless conduct for purposes of criminal liability.

Under Section 565.024.1[1] "[a] person commits the crime of involuntary manslaughter in the first degree if he ... recklessly causes the death of another person." Second-degree assault occurs if a person "recklessly causes serious physical injury to another person." Section 565.060.1. Third-degree assault occurs if a person "recklessly causes physical injury to another person." Section 565.070.1. For purposes of criminal liability, a person acts recklessly "when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." Section 562.016.4.

■ Although driving at an excessive speed does not alone establish criminal recklessness, speed combined with other circumstances can satisfy this element of an offense. In *Herring*, 502 S.W.2d at 409–10, we held that speeding, coupled with requests by a passenger to slow down while driving through a congested business area with heavy traffic at several intersections, was sufficient evidence of the defendant's "culpable negligence" or reckless

conduct under the former manslaughter statute, Section 559.070, RSMo 1969.[2]

Similarly, in *State v. Mintner*, 429 S.W.2d 762, 764 (Mo.1968), the defendant was guilty of manslaughter when he drove over eighty miles per hour through a heavily populated area, ignoring stop signals, and failed to keep his vehicle lights on. In *State v. Harris*, 743 S.W.2d 484, 485–86 (Mo.App.1987), a manslaughter conviction was supported by evidence that the defendant drove at an excessive speed, passed in improper passing zones, forced cars off the road, and had an alcohol odor on his breath. As illustrated by these cases, a finding of reckless conduct is justified by a combination of excessive speed and other factors that indicate a conscious disregard of a substantial risk likely to cause death or great bodily harm to another, such that a reasonable person would act differently under the same circumstances. *Herring*, 502 S.W.2d at 409.

In Morrison's case, the State presented evidence of speed and additional factors to prove his conduct was reckless. A police officer, who was trained in accident reconstruction, testified that Morrison had been driving at least seventy-two miles per hour when the accident occurred in a forty-five mile per hour speed limit zone. By analyzing the physical damage to the vehicles and the skid marks on the road, the police officer was able to determine that Morrison made no effort to brake or swerve to avoid hitting the Explorer until he was within thirty-five feet of the vehicle. Morrison admitted that he had first noticed the Explorer when it was traveling a quarter

1. All statutory references are to of Missouri Revised Statutes (2000), unless otherwise noted.

2. Section 559.070 (1969) is the predecessor statute for involuntary manslaughter under

Section 565.024 (2000). The predecessor statute required a showing of "culpable negligence," which was defined as the "reckless or utter disregard for human life." *Herring*, 502 S.W.2d at 409 (citation omitted).

to one-half mile (1,320 feet to 2,640 feet) ahead of him on the four-lane roadway.

Morrison displayed a conscious disregard for a substantial risk of injury or death by failing to take any evasive action until he was within four to six car lengths of the Explorer, when it was too late to prevent a collision at his excessive speed. After first noticing the Explorer, he had at least 1,320 feet of roadway to slow down, sound his horn, or switch lanes, as a reasonable person would have done under the circumstances. The State proved beyond a reasonable doubt that the accident resulted from the dangerous mixture of Morrison's speed and irresponsible conduct in following too closely behind the Explorer. The evidence was sufficient to support the trial court's finding that Morrison acted recklessly in causing death and injury to the occupants of the Explorer. Point I is denied.

■ In his second point on appeal, Morrison contends the trial court erred in convicting him of leaving the scene of an accident under Section 577.060. Morrison argues he was lawfully excused from complying with the law because he was "injured, bleeding, and distraught after the accident" and he agreed to leave the scene to go to the hospital with his friend, Anna Kankey. In light of this defense, he asserts the State's evidence was insufficient to prove a violation of the statute beyond a reasonable doubt.

■ Section 577.060 provides in relevant part:

A person commits the crime of leaving the scene of a motor vehicle accident when being the operator or driver of a vehicle on the highway ... and knowing that an injury has been caused to a person or damage has been caused to property, due to his culpability or to accident, he leaves the place of the inju-

ry, damage or accident without stopping and giving his name, residence, including city and street number, motor vehicle number and driver's license number, if any, to the injured party or to a police officer, or if no police officer is in the vicinity, then to the nearest police station or judicial officer.

If a vehicle accident involves personal injury or property damage, this statute requires the driver of the vehicle to take affirmative steps to identify himself. The driver can either remain at the accident scene to provide the identifying information or report to the nearest police station. Failure to comply with the statute may be legally excused upon a showing that the driver left the accident scene based on a reasonable "apprehension of danger." *State v. Urhahn,* 621 S.W.2d 928, 934 (Mo. App.1981).

Morrison asserts the evidence at trial showed he left the accident scene because he feared his medical condition presented a danger to himself. When he determined his injuries were not serious, Morrison contends he contacted his attorney. He followed the advice of his attorney in deciding not to return to the accident scene. Morrison argues he was excused from remaining at the scene due to his own injuries and that he subsequently "attempt[ed] to discharge his duty of providing information" by promptly contacting his attorney.

Despite Morrison's claim of lawful excuse, the evidence was sufficient to support the trial court's finding that he was guilty of violating Section 577.060. Morrison acknowledged he was the driver of the vehicle that ran into the rear of the Explorer. The accident caused the Explorer to rollover two or three times, during which one of the occupants was ejected and then pinned under the vehicle. Based on the nature and seriousness of the accident, Morrison was certainly aware of the prop-

erty damage and that one or more occupants of the Explorer had been injured. A witness testified that one of the injured occupants spoke to Morrison, but Morrison did not approach the Explorer. Instead, Morrison opened his trunk to retrieve papers and decided to leave with Kankey before an ambulance or police arrived on the scene. Morrison demonstrated little concern about his own injuries, as he told a witness at the scene that he was okay and also refused to go to the hospital once he got into the car with Kankey. He left the accident scene without identifying himself and did not report to the police station until several weeks later.

On appeal, we must view this evidence in a light most favorable to the State and give deference to the trial court's credibility determinations. *Villanueva*, 147 S.W.3d at 128; *State v. Dennis*, 153 S.W.3d 910, 922 (Mo.App.2005). The trial court was not required to believe Morrison's contention that he fled the accident scene in fear of his personal injuries or that he attempted to report the accident by contacting his attorney. *Dennis*, 153 S.W.3d at 922. The court reasonably determined that Morrison did not present a viable defense. The State's evidence was sufficient to prove beyond a reasonable doubt that Morrison left the scene of a motor vehicle accident without reporting his identity to the injured parties or the nearest police station. Point II is denied.

## WAIVER OF JURY TRIAL

In Point III, Morrison contends the trial court erred in accepting his jury trial waiver because "the waiver was not knowingly, voluntarily and intelligently made and was the product of coercion or duress." Because Morrison failed to preserve this claim for appeal, he seeks plain error review.

Under Rule 30.20, we have discretion to review for plain errors that affected the defendant's substantial rights and resulted in a manifest injustice or miscarriage of justice. Plain error is evident, obvious and clear. *State v. Banks*, 135 S.W.3d 497, 501 (Mo.App.2004). Review should not be granted unless error is facially established. *State v. Stallings*, 158 S.W.3d 310, 315 (Mo.App.2005). The appellant has the burden of proving plain error. *State v. Mitchell*, 145 S.W.3d 21, 22 (Mo.App.2004).

Morrison asserts that he decided to waive his right to a jury trial due to the trial court's adverse ruling on his motion in limine. In the pretrial motion, Morrison requested the court to exclude evidence regarding a racially inflammatory statement he allegedly made about one of the accident victims. The trial court denied the motion. At trial, Charles Kunkel, Morrison's former supervisor, testified that he had a conversation with Morrison several days after the accident. Morrison told Kunkel that he had been involved in a fatal accident and then said, "Oh, it's no big deal. It was just a fucking nigger."

At the close of evidence, the court announced its intention to disregard the racial comment because it was more prejudicial than probative. The court stated: "I don't think anything [Morrison] may or may not have said, as painful as it is for the family of the victims, I honestly do not think, other than, if he said it, to put him at the scene of the accident—although I'll tell you, I don't think the State needed that, as it turned out. I don't think that statement proves anything, if he made it, so I'm disregarding it."

On appeal, Morrison argues the trial court ultimately decided the racial comment should not have been admitted. He therefore contends the adverse ruling on his motion in limine was improper and "coerced" his decision to waive his right to a jury trial.

A defendant can waive his constitutional right to trial by jury provided the waiver is voluntarily, knowingly and intelligently made. *State v. Sharp*, 533 S.W.2d 601, 605 (Mo. banc 1976). In felony cases, the waiver must be made in open court and must be apparent from the record with unmistakable clarity. *Mitchell*, 145 S.W.3d at 23; Rule 27.01(b).

The record reveals Morrison made a statement in open court that he understood he had a right to a jury trial and he was waiving that right. Although he contends the waiver resulted from the denial of his motion in limine, we note the court's pretrial ruling was preliminary and subject to change during the course trial. *See State v. Purlee*, 839 S.W.2d 584, 592 (Mo. banc 1992). Given the interlocutory nature of the ruling, Morrison had no reasonable grounds to rely upon it as a firm decision in determining whether to waive his right to a jury trial. The trial court did nothing to mislead or compel Morrison to take any action. Morrison may have considered the possibility that a judge might be less influenced by the racial comment than a jury, but that does not prove he was *coerced* by the court's pretrial refusal to exclude the evidence. Regardless of whether the evidence was admissible, Morrison was given a full and fair opportunity to decide whether he wanted his case heard by a judge or jury. We find no indication in the record that the non-binding evidentiary ruling had any effect on the voluntariness of the waiver.

Morrison is not entitled to plain error review, as he failed to establish any facial error in the trial court's acceptance of his jury trial waiver. Point III is denied.

All concur.