Mark A. SMITH, Movant/Appellant,

v.

STATE of Missouri,
Respondent/Respondent.

No. ED 99547.

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 19, 2013.

Ellen H. Flottman, Columbia, MO, for Movant/Appellant.

Jennifer A. Rodewald, Jefferson City, MO, for Respondent/Respondent.

## SHERRI B. SULLIVAN, J.

### Introduction

Mark A. Smith (Movant) appeals from the motion court's judgment denying his amended Motion to Vacate, Set Aside or Correct Judgment and Sentence filed pursuant to Rule 24.035[1] (post-conviction motion) following an evidentiary hearing. We affirm.

### Factual and Procedural Background

For events occurring on August 18, 2007, the State charged Movant with one count of first-degree (reckless) involuntary manslaughter and one count of leaving the scene of an accident. On March 16, 2009, Movant appeared before court with his counsel, James Pennoyer (counsel or Pennoyer), and pled guilty to the charges. At the plea hearing, Movant was advised of his trial rights and that he was giving up these rights by pleading guilty. Movant indicated he understood. Movant stated he understood the range of punishment and that he was entering an open plea. Movant stated no one had coerced him or made any threats or promises in order to get him to plead guilty. The court read the charges to Movant and Movant stated he understood the charges against him.

The State then set forth the factual basis for the plea. On August 18, 2007, Movant and the victim, Kevin Fenwick (Fenwick), were at two different parties. Movant was at his residence playing a drinking game called Beer Pong before proceeding to another location where witnesses saw Movant "acting like he was intoxicated, stumbling, [and smelling] of beer." Movant then got into his vehicle and chased his ex-girlfriend to another location where the two argued. At approximately 1:30 a.m., Movant and his passenger, Michael Kearns, left this location in Movant's truck. Around this time, Fenwick left the party he attended and began walking home on New Diggins Road.

At approximately 2:00 a.m., Movant, who was operating the motor vehicle at approximately 60 to 73 miles per hour (mph), came upon Fenwick in the roadway. Mov-

---

1. All rule references are to Mo. R.Crim. P.2011, unless otherwise indicated.

ant claimed Fenwick was sitting in the middle of the roadway but then stood up, turned around and waved his arms at Movant. Movant "took no evasive action and struck [Fenwick] at approximately 63 miles per hour, throwing [Fenwick] approximately 217 feet further down the road and causing reasonably close to immediate death[.]" The prosecutor stated the evidence would show Movant "never braked, never took evasive action, never did anything to avoid that accident." The prosecutor stated the evidence would have shown that Movant had crossed the center line or failed to maintain the right half of the roadway with sufficient width.

Movant did not stop after the collision but instead drove home and hid the vehicle where it could not be seen from the roadway. Movant's neighbor reported seeing Movant carrying pieces of the truck and hiding them in the woods near his home. Upon executing a search warrant of Movant's home, police discovered Movant had packed his suitcases. The prosecutor stated that in an interview with police, Movant admitted consuming alcohol the day of the accident, to striking Fenwick while traveling approximately 60 mph, and failing to stop after the accident to determine whether Fenwick was alive.

Movant confirmed that the factual basis for the charges against him, as set forth by the prosecutor, was true. Movant stated he was pleading guilty because he was actually guilty.

The plea court's examination included the following:

Q. [Movant], you have been represented in this case by James Pennoyer. Was there anything you asked him to do as your attorney that he failed to do?

A. No, sir.

Q. Was there anything you asked him not to do in this case, and that might be not contacting certain wit-

nesses that you didn't want to bother, or something like that, that he did anyway?

A. No, sir.

. . .

THE COURT: Mr. Pennoyer, did you conduct discovery in this case?

MR. PENNOYER: Yes, Your Honor.

THE COURT: Have you had an opportunity to consider that discovery and to discuss it with [Movant].

MR. PENNOYER: Yes, Your Honor.

BY THE COURT:

Q. [Movant], it that true? Have you had a chance to look at whatever reports the State has prepared and provided Mr. Pennoyer, along with any other evidence that the State might have provided him?

A. Yes, sir. I have.

Q. Do you feel you have had enough time to read and consider all of that information?

A. Yes, sir.

The court accepted Movant's pleas of guilty as knowingly, intelligently, and voluntarily made and found Movant had the effective assistance of counsel.

On May 28, 2009, the plea court sentenced Movant to a seven-year term on the conviction for involuntary manslaughter and a consecutive two-year term on the conviction for leaving the scene of an accident. At the hearing, Movant stated he had sufficient time to discuss the case with counsel and that, aside from seeking a bond reduction, counsel had done everything he had asked him to do. When asked if he expected the State to recommend a particular sentence or whether any limit on sentences had been communicated to him, Movant stated, "No. I feel as if I was talked into pleading guilty, and the worst that would happen was presumptive." Movant stated he did not know if he

was satisfied with counsel's services. The court found there was no probable cause to believe Movant received ineffective assistance of counsel and found Movant had received effective assistance.

On November 23, 2009, Movant file his *pro se* post-conviction motion. Appointed counsel filed an amended motion alleging Movant's plea was not knowingly, intelligently and voluntarily made due to plea counsel's ineffectiveness. The amended motion alleged, in part, that counsel was ineffective for failing to investigate Movant's case by not hiring a expert accident reconstructionist.

On April 20, 2012, the motion court conducted an evidentiary hearing on Movant's amended post-conviction motion. The Missouri Highway Patrol's (Patrol) Reconstruction Report was admitted into evidence at the hearing. According to the report, Movant was driving north on New Diggins Road at approximately 1:30 a.m. New Diggins Road is a paved road, 18.4 feet in width with no painted center or outer edge lines. The roadway is wide enough for two cars to pass safely. There is no artificial light in the area and the speed limit is 60 mph. While the road curves approximately 1,000 feet south of the accident, the road is straight in the area of impact.

According to the Patrol's report, Movant told police he was traveling at approximately 60 mph when he drove around the curve and saw Fenwick sitting in the road. Movant stated Fenwick's back was facing him and as Movant approached, Fenwick stood up, turned around and raised his arms. Movant told police that in an attempt to avoid Fenwick, he oversteered and drove off the side of the road. Mov-

ant stated he was "reasonably sure" that he struck Fenwick but did not stop after the accident. Movant told police he had consumed alcohol prior to the crash.

The Patrol determined the area of impact based upon the location of the debris, body fluid, tissue, and a penny in the roadway. The penny was located approximately 12.7 feet from the outer edge of the northbound lane, placing it in the southbound lane. The next piece of evidence as to impact location was blood spray on the pavement 7.2 feet north of the penny and 10.2 feet from the outer edge of the northbound lane. Fenwick's body traveled approximately 169.8 feet north across the pavement and approximately 50.9 feet west across the dirt and grass terrain adjacent to the road, a total of 220.7 feet. The Patrol calculated that the impact speed needed to cause Fenwick's body to travel approximately 220.7 feet was 63 to 70 mph. The Patrol found the evidence indicated Movant, while traveling north, crossed the center portion of the roadway and struck Fenwick while he stood in the southbound lane.

The Patrol calculated that the total distance needed for a driver traveling at 60 mph at night to perceive, react, and then stop is 416.62 feet based on tests conducted by the Institute of Police Technology and Management.[2] The Patrol's report opined that a driver's perception and reaction time would increase if he had been consuming intoxicants or was inattentive to his surroundings.

The Patrol found Movant had failed to take any evasive action to avoid colliding with Fenwick. The Patrol concluded the crash could have been avoided if Movant

---

2. The Patrol's report found a vehicle moving at 60 mph would have traveled 219.9 feet in 2.5 seconds as the driver perceived and reacted to the hazard of the pedestrian in the roadway. Once perceived, it would have taken 196.72 feet to stop, for a total of 416.62 feet for the driver to perceive, react and stop.

would have remained on the right half of the roadway or stopped the vehicle prior to striking Fenwick or if Fenwick would have moved out of the way as the vehicle approached.

Tom Morris (Morris), a traffic accident reconstructionist, reviewed and evaluated the evidence of the accident at the request of post-conviction counsel and testified at the evidentiary hearing on Movant's behalf. Morris testified his conclusion and evaluation differed from the Patrol's, as he was examining the likelihood that the vehicle would have been able to successfully avoid the victim.

Morris testified it is possible that a driver may operate at or near the center line on a narrow roadway. Morris stated there was some uncertainty as to where Fenwick was standing when struck, taking issue with the Patrol's consideration of the penny in the roadway because he did not believe there was any evidence that it was related to this particular incident. Morris opined that without a clear indication of Fenwick's precise location on the roadway at impact, there was insufficient evidence to establish the location of Movant's vehicle on the roadway upon impact.

At the time of the accident, Fenwick was wearing a brown shirt and yellow shorts. Morris stated the average recognition distance of a driver utilizing his "low beam" headlights of a darkly-clothed pedestrian seated in the roadway was 127 feet but that it increases to 174 feet if Fenwick was standing. Using the Monte Carlo Method,[3] a generally accepted methodology in the scientific community for accident reconstruction, Morris calculated the total distance necessary for Movant to stop the vehicle after recognizing Fenwick in the roadway was 319 feet. Morris found the stopping distances calculated by both him and the Patrol were significantly greater than the distance Movant would have been expected to recognize Fenwick as a pedestrian.

Morris testified that 90 percent of nighttime drivers' first response to a hazard directly in front of them is braking. Morris stated that under the Monte Carlo Method, there was a 1.6 percent probability that a driver going 55 to 65 mph would have successfully avoided a pedestrian standing in the middle of the roadway by braking. Morris testified that if a driver were using his "high beams" the recognition distance would increase to 220 feet and probability of collision would decrease to 91 percent.

Morris stated when a driver steers to avoid an obstacle, a driver in the right lane will typically steer to the left rather than toward the edge of the roadway. Due to this tendency, Morris opined that if Movant would have attempted to steer to avoid the accident, it was likely the accident would have still occurred. In his report, Morris indicated that if Movant had steered to the right, there was a 56 percent chance the collision would have been avoided.

Morris opined that, given that few drivers would have attempted to right-steer maneuver toward the roadway edge at night and the high probability of the collision when braking, it is highly likely that a random driver, when presented with this set of initial conditions, would have struck Fenwick. Morris testified there was not a reasonable opportunity for a driver to successfully avoid a collision with Fenwick under the circumstances.

---

**3.** The Monte Carlo Method is a method of analysis using ranges of reasonable values and data based upon published research, as opposed to using absolute values, to mathematically simulate situations to calculate the probability of an outcome.

On cross-examination, Morris stated his cited recognition distances calculate the distance it takes for a driver to recognize that the obstacle is a pedestrian, but prior to such recognition the driver would "recognize an object as something." Morris acknowledged that it was possible that a driver, upon seeing an obstacle, may slow down prior to recognizing the obstacle as a pedestrian. Morris stated there was no direct evidence Movant's vehicle had slowed down prior to impact but that often upon deceleration a vehicle will not leave evidence of such deceleration on the roadway. Morris's report indicates that 78 percent of drivers would have made some response prior to impact.

Morris stated that none of the studies used in his analysis takes into account the effects of alcohol impairment. Morris was unable to say whether alcohol impairment would have affected the detection distance, stating the study was "comparing the performance ... [of] a normal driver that's traveling at a posted [speed] limit that is not impaired."

Morris testified he was never contacted by plea counsel but if he had been asked, he would have performed an accident reconstruction analysis and prepared a report prior to Movant pleading guilty. Morris stated he would have agreed to testify at trial about the findings and conclusions of his report. Morris acknowledged that it was common for there to be differing opinions between experts in the field of accident reconstruction.

Movant initially testified he and Pennoyer never discussed the possibility of hiring an accident reconstructionist to review his case. Movant then asserted he asked Pennoyer to retain an accident reconstructionist on his behalf and that Pennoyer "said something along the lines of 'it's really not necessary.'" Movant acknowledged he did not advise the court about this complaint when asked at the plea and sentencing hearings if there was anything counsel failed to do. Movant testified that had counsel obtained the services of Morris or a similar reconstructionist before pleading guilty he would not have pled guilty and would have insisted on going to trial.

The deposition of Pennoyer was admitted into evidence. Pennoyer testified he reviewed the Patrol's report and went over it with Movant. Pennoyer thought the Patrol's report was "pushing" in the State's direction and that some of its conclusions came close to "stretching." Pennoyer believed the most effective method to discredit the Patrol's accident reconstructionist was through cross-examination. Pennoyer stated he did not hire a reconstructionist because it was expensive, he did not believe it would provide any new information, and the conclusions in the Patrol's report were subject to cross-examination. Pennoyer stated he could cross-examine the officer about the report's conclusion but he could not change the facts that Movant was driving, the collision occurred, and that Movant left the scene following the accident.

On January 14, 2013, the motion court entered its Judgment denying Movant's post-conviction motion. The court found Movant confessed to leaving the scene of the accident after striking the victim and that nothing in either Morris's report or testimony refutes those facts. The court further found, consistent with his prior assertions that counsel had not failed to do anything that was asked of him, that Movant did not ask counsel to retain his own reconstructionist. Further, the court found that Pennoyer believed the best way to attack the Patrol's report would have been though cross-examination and that counsel's conduct was reasonable. The court found Movant failed to prove by a preponderance of the evidence that his

defense counsel was ineffective. This appeal follows.

## Point on Appeal

On appeal, Movant argues the motion court erred in denying his motion for post-conviction relief because Movant received ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 18(a) of the Missouri Constitution, in that plea counsel failed to investigate the accident that was the basis for the charged offense [4] by consulting an accident reconstructionist. Movant contends the ineffective assistance of counsel rendered his plea involuntary because had Movant known that a reconstructionist would testify that the accident was unavoidable, he would not have pleaded guilty but would have insisted on going to trial.

## Standard of Review

 Our review of the denial of a Rule 24.035 motion is "limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 24.035(k). The motion court's findings and conclusion are clearly erroneous only if, after a full review of the record, this court is left with a definite and firm belief that a mistake has been made. *Chaney v. State*, 323 S.W.3d 836, 841 (Mo. App. E.D.2010). We presume the motion court's findings and conclusions are correct. *Id.* The motion court is not required to believe the testimony of the movant or any other witness, even if uncontradicted, and this Court defers to the motion court's determination of credibility. *Id.* Movant has the burden of proving error by a preponderance of the evidence. *Buckner v.*

*State*, 35 S.W.3d 417, 421 (Mo.App. W.D. 2000).

## Discussion

To be entitled to post-conviction relief based on a claim of ineffective assistance of counsel, a movant must demonstrate that counsel's performance did not conform to the customary skill and diligence of a reasonably competent attorney under similar circumstances and that he was prejudiced by counsel's deficient performance. *Worthington v. State*, 166 S.W.3d 566, 572–73 (Mo. banc 2005), citing *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Following a guilty plea, the movant waives all claims of ineffective assistance of counsel "except to the extent that the conduct affected the voluntariness and knowledge with which the plea was made." *Worthington*, 166 S.W.3d at 573.

It is presumed that counsel's conduct is sound trial strategy and that counsel rendered adequate assistance of counsel, making all significant decisions in the exercise of professional judgment. *Pittman v. State*, 331 S.W.3d 361, 364 (Mo.App. W.D. 2011). " 'Reasonable choices of trial strategy, no matter how ill fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance.' " *Worthington*, 166 S.W.3d at 573, quoting *Cole v. State*, 152 S.W.3d 267, 270 (Mo. banc 2004).

To prove prejudice, a movant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Worthington*, 166 S.W.3d at 573. In the context of a guilty plea, the movant must prove that, but for counsel's errors, he would not have pled guilty and would have proceeded to trial. *Id.*

---

4. On appeal, Movant only challenges his guilty plea to the charge of involuntary man-

slaughter and raises no issue as to his plea to the leaving the scene of the accident charge.

On appeal, Movant argues he did not have the opportunity to make an intelligent choice among the alternatives available to him because his plea counsel failed to fully investigate his case by hiring an accident reconstructionist and discovering that Movant "was in fact not guilty of the involuntary manslaughter because he was not acting recklessly when the accident occurred." In support, Movant argues Morris's report and testimony indicate there is uncertainty as to where Fenwick was standing when he was struck; there was only a 1.6 percent probability that the collision could have been avoided; and, in Morris's opinion, there was not a reasonable opportunity for a driver to successfully avoid the collision under the circumstances. Movant asserts that in light of Morris's conclusion that 98 percent of drivers driving the speed limit could not have avoided the accident, Movant was not reckless and he would not have pled guilty if counsel had done a full and complete investigation and discovered this information.

By entering a guilty plea, a movant generally waives any future complaints regarding his counsel's failure to investigate and prepare for trial. *Yoakum v. State*, 849 S.W.2d 685, 688 (Mo.App. W.D. 1993). The claim is only relevant in regard to the voluntariness of the guilty plea. *Id.* "To succeed on an ineffective assistance of counsel claim based on inadequate investigation, movant must specifically describe the information the attorney failed to discover, allege that a reasonable investigation would have resulted in the discovery of such information and prove that the information would have aided or improved movant's position." *Id.*

Movant's claim fails for several reasons. First, Movant has failed to prove that retaining an accident reconstructionist would have aided or improved Movant's position, an element necessary for a successful claim of inadequate investigation. Several of Morris's findings and conclusions are either contradicted or undermined by the facts as admitted by Movant at the plea hearing, in particular Morris's suggestion that Movant may not have crossed the center line, Movant was traveling at the posted speed limit, and there was no evidence of Movant's failure to take action to avoid the collision. Further, Morris testified that none of the studies used in his analysis takes into account the effects of alcohol impairment. Morris was unable to say whether alcohol impairment would have affected the detection distance, stating the study was "comparing the performance ... [of] a normal driver that's traveling at a posted [speed] limit that is not impaired." This was clearly not the situation present in this case, as the evidence is that Movant was driving above the posted speed limit and had consumed alcohol that day.

The facts as set forth by the prosecutor at the plea hearing, and as admitted to by Movant, were that prior to the accident Movant had consumed alcohol to the point that he was "acting like he was intoxicated, stumbling, [and smelled] of beer." Movant also admitted at the plea hearing to operating the motor vehicle at approximately 60 to 73 mph, hitting Fenwick while traveling at approximately 63 mph, and "cross[ing] the center line or fail[ing] to maintain the right half of the roadway." Movant further admitted at the plea hearing he took no evasive action to avoid the collision and did not stop after the collision.

Thus, the facts, as admitted to by Movant, contradict or undermine many of Morris's conclusions about the accident. In particular, Morris's analysis does not account for the fact that Movant failed to maintain the right half of the roadway. The Patrol found the evidence indicated

that Movant, while traveling north, crossed the center portion of the roadway and struck Fenwick who stood in the southbound lane. Again, Movant admitted at the plea hearing that he had, in fact, "crossed the center line or failed to maintain the right half of the roadway with sufficient width." In its report, the Patrol concluded the crash could have been avoided if Movant would have remained on the right half of the roadway or stopped the vehicle prior to striking Fenwick or if Fenwick would have moved out of the way as the vehicle approached. Morris's report only speaks to one of the Patrol's alternatives, that being whether Movant could have stopped his vehicle prior to striking Fenwick. Of the two remaining alternatives presented by the Patrol, one of them addresses Movant's conduct, i.e., Movant's failure to remain on the right half of the roadway. In his report, Morris takes issue with the Patrol's evidentiary analysis as to Fenwick's location in the roadway upon impact, concluding there is insufficient evidence to establish such. Morris's finding of inconclusiveness does not contradict Movant's prior admission that he crossed the center line. The implication of the Patrol's finding and Movant's admission is clear; regardless of Morris's opinion that it was unlikely Movant could have stopped or swerved to avoid hitting Fenwick, neither action would have been necessary to avoid the collision if Movant had properly maintained the right half of the road.

 Morris's report does not mitigate the facts supporting the conviction. Pursuant to Section 565.024.1(1),[5] a person commits the crime of first-degree involuntary manslaughter if he "[r]ecklessly causes the death of another person[.]" A person acts recklessly "when he consciously disregards a substantial and unjustifia-

ble risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." Section 562.016.4. "Although driving at an excessive speed does not alone establish criminal recklessness, speed combined with other circumstances can satisfy this element of an offense." *State v. Morrison*, 174 S.W.3d 646, 649 (Mo.App. W.D.2005). "[A] finding of reckless conduct is justified by a combination of excessive speed and other factors that indicate a conscious disregard of a substantial risk likely to cause death or great bodily harm to another, such that a reasonable person would act differently under the same circumstances." *Id.*

Again, Morris's conclusions are based upon an unimpaired driver traveling at the posted speed limit and uncertainty as to whether Fenwick was standing in the southbound lane at the time of impact. This, however, is not the case before us. The facts, as admitted by Movant at the plea hearing, were that Movant consumed alcohol to the point he appeared to be intoxicated, was stumbling, and smelled of alcohol, then got into his truck, where he went speeding down a dark, narrow public road, all while failing to stay on his half of the roadway. Movant took no evasive action to avoid the collision nor stopped to assist Fenwick after the fact. These acts, either separately or in concert, resulted in Fenwick's death. This combination of acts and factors justifies a finding that Movant acted recklessly and with a conscious disregard that his behavior created a substantial risk likely to cause death or great bodily harm to another. See *Morrison*, 174 S.W.3d at 649 and Section 562.016.4.

Finally, the motion court's finding that Pennoyer's decision not to hire an indepen-

5. All statutory references are to RSMo2006.

dent accident reconstructionist was reasonable trial strategy and was not made contrary to Movant's express requests to do so is supported by the record and is not clearly erroneous. Although Movant testified at the hearing that he asked Pennoyer to hire his own reconstructionist, this testimony is contradicted by Movant's prior assertions at the plea and sentencing proceedings that counsel had done everything Movant had asked of him. The motion court was not required to believe Movant's testimony and we defer to the motion court's determination of credibility. *Chaney*, 323 S.W.3d at 841. Also, Pennoyer testified he reviewed the Patrol's report and went over it with Movant. Pennoyer stated he did not hire a reconstructionist not only because it was expensive and would not provide any new information, but also because he believed the most effective method to discredit the Patrol's report was through cross-examination. Pennoyer's decision to challenge the Patrol's conclusions about the accident through cross-examination falls squarely within the realm of reasonable trial strategy.

Based on the foregoing, the motion court's judgment denying Movant's post-conviction motion is supported by the record and is not clearly erroneous. Movant's point on appeal is denied.

### Conclusion

The judgment of the motion court is affirmed.

LAWRENCE E. MOONEY, P.J., and ROBERT G. DOWD, JR., J., concur.