

# In the
# Missouri Court of Appeals
# Western District

DARION POLK,

                Appellant,

v.

STATE OF MISSOURI,

                Respondent.

WD82759

OPINION FILED:

August 18, 2020

Appeal from the Circuit Court of Boone County, Missouri
The Honorable Kevin Crane, Judge

Before Division Three:
Gary D. Witt, P.J., Lisa White Hardwick and Thomas N. Chapman, JJ.

Darion Polk ("Polk") appeals the judgment denying his Rule 24.035[1] motion for post-conviction relief entered by the Circuit Court of Boone County, Missouri ("motion court"), following an evidentiary hearing.  Polk claims he received ineffective assistance of counsel when entering his plea to three counts of robbery in the first degree, and three counts of armed criminal action.  We affirm.

---

[1] All rule references are to the Missouri Supreme Court Rules, as amended January 1, 2018.

**Facts and Procedural History**

On July 17, 2017, Polk pled guilty to three counts of robbery in the first degree and three counts of armed criminal action in the Circuit Court of Boone County, Missouri. The State agreed to recommend that the court impose sentences of twelve years on each of the three robbery counts, fourteen years on each of the three counts of armed criminal action, and to recommend that the sentences run concurrently. The State also agreed to dismiss two additional counts of robbery in the first degree and two additional counts of armed criminal action.

At the plea hearing, Polk testified that he wanted to plead guilty, that no one had coerced or pressured him into accepting the agreement, and that he was pleading guilty because he was actually guilty. Polk attested that his trial counsel had done all that he asked of him, and that he was satisfied with the counsel he had been provided:

> [COURT]: So you want me to send you for 12, 12, and 12 on Counts III, V, and IX, and 14, 14, and 14 on Counts IV, VI, and X, all running concurrent.
> Is that what you want me to do?
>
> [POLK]: Yes, sir. …
>
> [COURT]: Has anybody threatened you or coerced you in any manner in order to get you to plead guilty against your will?
>
> [POLK]: No, sir. …
>
> [COURT]: So are you pleading guilty to all that because you're actually guilty?
>
> [POLK]: Yes, sir.
>
> [COURT]: You've been represented in this matter by [trial counsel]. Have you had ample opportunity to meet with him and discuss this case with him?
>
> [POLK]: Yes, sir.
>
> [COURT]: Is there anything you've asked him to do that he's refused to do?
>
> [POLK]: No, sir.

[COURT]: Do you have any complaint whatsoever about the way he's represented you?

[POLK]: No, sir.

The plea court accepted Polk's guilty plea and sentenced him in accordance with the State's recommendations.

Polk filed a pro se motion for post-conviction relief. Following the appointment of counsel, he timely filed his amended motion for post-conviction relief. In his amended motion, Polk claimed his trial counsel had provided ineffective assistance, in that counsel had failed to "adequately consult and meet" with him prior to the guilty plea hearing and sentencing, and had "provided incorrect, misleading, and deceptive information to Mr. Polk to coerce [him] to plead guilty against [his] wishes."

At the evidentiary hearing of his post-conviction motion, Polk testified that he was no longer satisfied with trial counsel's performance, alleging that his counsel had misled him into pleading guilty by telling him, on the day of the plea hearing, that if he did not plead guilty, his trial would occur the following day and he would most likely receive a life sentence.[2] However, Polk acknowledged during cross-examination that he told the plea court that he was satisfied with the level of representation he had received from trial counsel. He further acknowledged that he was initially charged with five counts of first-degree robbery (carrying a sentencing range of ten to thirty years) and five counts of armed criminal action (carrying no maximum sentence)

---

[2] Polk's amended 24.035 motion alleged that his trial counsel made a total of fourteen statements during the course of his representation that coerced Polk into pleading guilty. Generally, the statements that Polk alleged his trial counsel made to him indicated that he would definitely be found guilty if he chose to proceed to a jury trial. Of particular relevance to this appeal, Polk alleged that his trial counsel told him "that because the alleged victims were white, and Mr. Polk was black, he would be convicted at trial." At his 24.035 hearing, Polk affirmed that the statements he attributed to his trial counsel in the amended motion were accurate.

.

3

and that, pursuant to his plea agreement, he received concurrent sentences requiring fourteen years' incarceration.

At the evidentiary hearing, Polk's trial counsel testified that he had met with Polk twenty-two times prior to the guilty plea hearing, and that he explained to Polk the evidence the State had obtained and the different options that could be pursued. Trial counsel indicated that Polk continually stated that he did not want to go to trial, but instead wished to enter a plea of guilty:

> [TRIAL COUNSEL]: There weren't a whole lot of strengths in Darion's case. The strengths were more trying to get mitigating information with regard to who he is, community support, things like that, to try to mitigate any kind of sentence he would get. The weaknesses were obviously that there were multiple robberies and that he confessed to multiple robberies. And these particular robberies weren't robberies where it was something to the effect of a drug deal gone bad or something like that. These were robberies of people in the community who weren't likely to disappear or not want to cooperate with the police. That's what I saw as the weaknesses. …
>
> [STATE]: All right. And so at what point in your representation did matters turn to you advising him to pursue a plea?
>
> [TRIAL COUNSEL]: I don't know -- well, in our first meeting he started by always saying, "I don't want to go to trial. I want to plead guilty." Probably months and months in he said, "Well, maybe I will go to trial." But then he quickly changed his mind back to, "No, I want to plead guilty." … From the beginning Darion told me he didn't want a trial; he wanted to plead guilty. At one point briefly he said, "Maybe I will go to trial, if I can't get an offer that I want." Which is always how it works. He then quickly changed his mind back to not wanting a trial, wanting to have a plea agreement. That was -- I would have said -- I would have advised him, "I think that's a good idea, because I think they have a strong case against you."

At the evidentiary hearing, Polk's trial counsel denied making any of the many statements Polk alleged were misleading or coercive:

> [STATE]: … I'm going to go back into reading some of these statements, and you can just make your comments about that. You telling Mr. Polk that, if he investigated -- if he investigated the case or sought additional discovery, the prosecuting attorney would ensure he received multiple life sentences.

[TRIAL COUNSEL]: That just didn't happen. No, I didn't tell him that. …

[STATE]: All right. That the jury would automatically find him guilty at trial?

[TRIAL COUNSEL]: No, I didn't tell him that. …

[STATE]: That because the alleged victims were white and Mr. Polk was black, he would be convicted?

[TRIAL COUNSEL]: No, I wouldn't have told him that. … I certainly would have spoken about that the allegation was this was a group of young, mostly black males committing robberies against majority Caucasian victims. I believe there was one robbery allegation where it was young Asian males at an apartment. And I would have said, "Look, I think that those facts play harder to a jury." But I certainly didn't say what's stated in that claim. …

[STATE]: All right. So, moving on. Guaranteeing him he would be found guilty of the offenses.

[TRIAL COUNSEL]: I certainly didn't ever guarantee what would happen at trial. I always say, "I can't guarantee what would happen at trial." …

[STATE]: That if you appeal or sought post-conviction relief, that you would lie and deny everything, because you liked the job and did not want to be fired.

[TRIAL COUNSEL]: I didn't say that.

[STATE]: That if he appealed or sought post-conviction relief, the Court would automatically believe your testimony over that of Mr. Polk.

[TRIAL COUNSEL]: I didn't say that. I didn't advise him as to post conviction.

Trial counsel asserted that he went over the strengths and weaknesses of the case with Polk and advised that a guilty plea would be a good idea based upon the strength of the State's evidence and the possibility he would receive a longer sentence if he were convicted at trial. Trial counsel denied telling Polk that "because the alleged victims were white and Mr. Polk was black, he would be convicted." Instead, trial counsel had explained that "those facts play harder to a jury" in "Boone County where you're going to have a vast majority of white jurors." Trial counsel stated that he believed "race matters in the courtroom" and the allegations against Polk

5

would have been hard to overcome. Trial counsel indicated that he did not tell Polk that he would be convicted simply because he was black and the alleged victims were white – that he did not claim to know what the outcome would be if the case were tried.

In its judgment denying post-conviction relief, the motion court indicated that it believed trial counsel was credible, and that Polk had failed to prove that his conviction or sentence violated his rights. This appeal follows.

**Analysis**

Appellate review of the denial of a motion filed under Rule 24.035 is "limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 24.035(k). "The motion court's findings and conclusion are clearly erroneous only if, after a full review of the record, this court is left with a definite and firm belief that a mistake has been made." *Smith v. State*, 413 S.W.3d 709, 715 (Mo. App. E.D. 2013). The motion court's findings and conclusions are presumptively correct, and we defer to its determinations regarding witness credibility. *Id.* "The movant has the burden of proving [his] claims for relief by a preponderance of the evidence." Rule 24.035(i).

To prevail on a claim of ineffective assistance of counsel, the movant must establish through an objective standard of reasonableness, that trial counsel's "performance was deficient," and "must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The question is "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688. "Even if a defendant shows that particular errors of counsel were unreasonable, … the defendant must show that they actually had a [prejudicial] effect on the defense." *Id.* at 693. In the context of a Rule 24.035 motion, prejudice requires the movant to show that he would not have pleaded guilty, but would have

6

instead proceeded with trial, had it not been for his counsel's purportedly unprofessional conduct. *Roberts v. State*, 276 S.W.3d 833, 836 (Mo. banc 2009).

A guilty plea must be a voluntary decision made by the defendant with sufficient awareness of the likely consequences of the act. *Id.* If the defendant is misled, or induced to plead guilty by fear, the plea of guilty is not voluntary. *Id.* However, it is not considered misleading or coercive for an attorney to honestly discuss with his client the potential obstacles that may arise at trial (including the demographics of the jury pool) and how those issues may affect the outcome or potential sentence. *Dishmon v. State*, 248 S.W.3d 656, 661-62 (Mo. App. S.D. 2008).

In his amended Rule 24.035 motion, Polk listed fourteen statements his trial counsel made throughout the course of representation prior to his guilty plea hearing. Among those statements, Polk claimed that trial counsel pressured him into pleading guilty by telling him that "because the alleged victims were white and Mr. Polk was black, he would be convicted at trial." At the motion hearing, trial counsel denied making any of the alleged statements listed in the amended motion at the evidentiary hearing. Trial counsel testified that he did advise Polk that a plea agreement was "a good idea" based on the fact that the State had a "strong case against him." Trial counsel denied telling Polk that he would be found guilty at trial, and indicated to Polk that he could not predict the outcome of a trial.

The motion court found trial counsel's testimony to be credible. In addition, the motion court found that, considering the weight of the evidence gathered by the State, including Polk's confession to the police, trial counsel's advice to accept a plea offer was reasonable. "The motion court is not required to believe the testimony of the movant or any other witness, even if

7

uncontradicted, and this Court defers to the motion court's determination of credibility." *Smith*, 413 S.W.3d at 715.

In his appeal, Polk no longer asserts that counsel made the various statements that were alleged in his amended motion, and does not address whether the motion court erred in denying his claim based on those purported statements. Polk does not reassert his argument that trial counsel provided ineffective assistance by allegedly advising him that "he would be found guilty at trial[]" because he was black and the victims were white. Instead, Polk now complains that trial counsel was ineffective for providing the advice that trial counsel acknowledged (at the motion hearing) that he did provide. In particular, Polk now posits that, by advising him that, because the perpetrators of the robberies were mostly black, the victims were mostly white, and the trial would take place in majority white Boone County, "those facts [would] play harder to a jury[,]" trial counsel coerced his plea. Accordingly, Polk is advancing a new claim on appeal that was not asserted in his amended 24.035 motion.

"When claims on appeal are not asserted in an original or amended Rule 24.035 post-conviction motion, they are waived. Claims not presented to the motion court cannot be raised for the first time on appeal." *Spencer v. State*, 202 S.W.3d 723, 726 (Mo. App. S.D. 2006) (internal citations omitted). "Pleading defects cannot be remedied by the presentation of evidence and refinement of a claim on appeal." *McLaughlin v. State*, 378 S.W.3d 328, 340 (Mo. banc 2012) (internal quotes and citation omitted). "The purpose of an evidentiary hearing is not to provide a movant with an opportunity to produce facts not alleged in the motion[,]" but "to determine if the facts alleged in the motion are true." *Young v. State*, 466 S.W.3d 669, 674 (Mo. App. E.D. 2015). "[T]here is no plain error review in appeals from post-conviction judgments for claims that were not presented in the post-conviction motion." *McLaughlin*, 378 S.W.3d at 340.

8

As Polk did not challenge the advice trial counsel actually gave him in his amended 24.035 motion, he cannot raise his newly refined claim for the first time on appeal. *Gilyard v. State*, 303 S.W.3d 211, 215 (Mo. App. W.D. 2010).[3]

Polk's sole point on appeal is denied.

## Conclusion

The judgment of the motion court denying Polk's motion for post-conviction relief pursuant to Rule 24.035 is affirmed.

/s/ *Thomas N. Chapman*

Thomas N. Chapman, Judge

All concur.

---

[3] We do note, *ex gratia*, that even were we to review Polk's unpreserved claim of error, we would find that it fails. Polk presented no evidence to suggest that trial counsel was incorrect when counsel advised him of the strengths and weaknesses of the case, and of the possible difficulties occasioned by trying the case with a mostly white jury pool. This was reasonable advice considering "[i]t is the duty of counsel to advise a client of the possible consequences of trial so that the client may make an informed decision as to whether to accept or to reject a plea agreement." *Letterman v. State*, 369 S.W.3d 792, 793 (Mo. App. S.D. 2012) (internal quotes and citation omitted). "Sound advice by counsel does not constitute coercion merely because it is unpleasant to hear." *Id.* (internal quotes and citation omitted).

"In rendering advice, a lawyer may refer not only to law but to other considerations such as moral, economic, social, and political factors that may be relevant to the client's situation." Rule 4-2.1. In a related case, the Southern District of this Court indicated that it is reasonable for counsel to explain to a criminal defendant that various demographic considerations could make obtaining an acquittal more difficult should the defendant choose to proceed with a jury trial:

> Trial counsel explained that he always tells his clients what the jury "is going to look like," including racial composition, so that the client will have a better understanding of what he is either giving up or getting into. He pointed out that it is important for a defendant to understand that jurors in Dunklin County "tend to be middle aged, older, always have been employed, and have never been in any trouble." Trial counsel explained to Movant that it was important to understand that most jurors (unlike judges) have little contact with felons, and that, accordingly, they can "have difficulty understanding a criminal defendant." **Movant's other trial attorney echoed this testimony and pointed out that she also had a practice of informing her clients that the jury will not be entirely composed of jurors of the same race. Indeed, in Dunklin County, Movant's second-chair counsel explained, juries are sometimes composed entirely of Caucasian jurors or mostly Caucasian jurors with one or two African-American jurors. Such advice is reasonable.**

*Dishmon*, 248 S.W.3d at 662 (emphasis added).