

# In the Missouri Court of Appeals
## Eastern District

### DIVISION III

| | | |
|---|---|---|
| JEFFREY YOUNG, | ) | No. ED101433 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Edward W. Sweeney, Jr. |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | FILED:  May 19, 2015 |

Introduction

Jeffrey Young ("Young") appeals from the judgment of the motion court denying his

Rule 24.035[1] motion for post-conviction relief.  Young avers that the motion court clearly erred

in denying his Rule 24.035 motion without an evidentiary hearing because he alleged facts not

refuted by the record demonstrating that he received constitutionally deficient assistance of

counsel.  In particular, Young alleges that counsel was ineffective in: (1) using his family

members to convey legal advice and information; (2) failing to take adequate measures to

address his difficulties with communication; and (3) failing to contest the determination of

competency made by the Department of Mental Health and failing to request a second

examination.  Because Young failed to allege facts not refuted by the record demonstrating he is

---

[1] All rule references are to Mo. R. Civ. P. (2014) unless otherwise noted.

entitled to relief, the motion court did not clearly err in denying his Rule 24.035 motion without an evidentiary hearing. Accordingly, we affirm the judgment of the motion court.

Factual and Procedural History

On November 20, 2009, the State of Missouri charged Young with first-degree statutory sodomy and attempted first-degree statutory sodomy of P.R., Young's five year-old cousin. The State alleged that Young put his penis in P.R.'s anus (Count I) and pushed P.R.'s head and told P.R. to put his mouth on Young's penis (Count II).

Young retained Kristy Ridings ("Ridings") to serve as his defense counsel.[2] On May 17, 2011, Young appeared before the plea court with Ridings and entered blind guilty pleas to both charges. The plea court then engaged Young in a lengthy dialogue about whether he understood the nature of the charges against him, the range of punishment that he faced, the lack of a plea bargain, the fact that he was entering his pleas with the possibility of any sentence within the range of punishment, his rights to a trial, the facts of the offenses charged, and Young's actions in committing those offenses. Young affirmed that he understood the charges against him, understood the consequences of his pleas, and understood the rights he was waiving by pleading guilty. The plea court accepted Young's pleas as entered knowingly and voluntarily and ordered a Sentence Assessment Report to be completed before sentencing.

On August 12, 2011, the plea court sentenced Young to a term of ten years in the Missouri Department of Corrections. After briefly advising Young about his rights under Rule 24.035, the plea court continued the sentencing hearing to allow Young time to consult with counsel about Rule 24.035

The sentencing hearing resumed on September 9, 2011. Young appeared with Jeremy Farishon ("Farishon"), an attorney in Ridings's law office. The plea court advised Young about

---

[2] We refer to Ridings both by name and as "counsel" throughout the opinion.

his rights under Rule 24.035 and asked Young about the assistance he received from his defense counsel.[3] Young indicated that he was dissatisfied because his attorneys did not visit him in jail, did not explain his case or options to him, and ultimately only told him that he would lose if he went to trial. Because of Young's allegations, the plea court continued the sentencing hearing in order to obtain a response from each attorney who assisted in Young's case.

On November 3, 2011, the plea court heard testimony from Ridings and Farishon. Ridings testified that she was retained by Young in January 2010 and met with Young at or near that time on several occasions. Ridings explained that the first few meetings with Young were not productive because Young's only concern was getting a bond. Ridings also explained that because Young had some difficulty in understanding the information and advice she provided him, she used his family members to help convey that information. After meeting with Young several times, Ridings motioned the trial court for a competency evaluation. A few months later the Missouri Department of Mental Health concluded Young was mentally fit to proceed.[4] After receiving that report, Ridings testified that she began a vigorous preparation for trial, which included taking three depositions. However, in May 2011, based upon Ridings's recommendation and the advice of his family, Young decided to plead guilty.

Farishon testified that he began working with Ridings in November 2010. Farishon recalled meeting with Young three times while Young was incarcerated. At these meetings, Farishon testified that he and Young discussed the facts of the case, possible defenses, who would be called as witnesses, and what resolution was desired. Farishon testified that it took a while for Young to understand things but he always took the time to get to a point where he was

---

[3] The plea court asked Farishon to step out of the courtroom so Young could speak freely.
[4] The Department of Mental Health determined that Young suffers from mild mental retardation but did not lack the capacity to understand the proceedings against him and to assist in his own defense.

3

confident Young understood. Finally, Farishon testified that he explained the ramifications of pleading guilty to Young and believed Young understood those consequences.

After hearing the testimony of Ridings and Farishon, the plea court found no probable cause to believe Young received ineffective assistance of counsel from his attorneys. Young subsequently filed a *pro se* Rule 24.035 motion for post-conviction relief. Post-conviction counsel filed an amended motion and request for an evidentiary hearing alleging that counsel was ineffective in: (1) using Young's family, who was also the family of P.R., to communicate with Young and explain legal advice; (2) failing to take any appropriate measures to communicate with Young in a manner he could understand; and (3) failing to challenge the evaluation of the Department of Mental Health finding that Young was mentally fit to proceed. The motion court found that Young's allegations were refuted by the record and denied Young's motion without an evidentiary hearing. This appeal follows.

### Points on Appeal

Young raises three points on appeal, each asserting that the motion court clearly erred in denying an evidentiary hearing on his Rule 24.035 motion because he alleged facts not refuted by the record establishing he was denied effective assistance of counsel. In Point One, Young asserts that counsel was ineffective in using his family members to explain the legal process and counsel's legal advice to him. Young avers that he faced substantial pressure from his family, who is also the family of P.R., to plead guilty, and without such "psychological coercion" he would not have pleaded guilty. In Point Two, Young argues that counsel was ineffective in failing to make sufficient efforts to communicate with Young in a manner he was able to understand. In Point Three, Young avers that counsel was ineffective in failing to contest the

4

determination of competency made by the Department of Mental Health and in failing to request a second competence examination.

## Standard of Review

Appellate review of a motion court's denial of a Rule 24.035 motion is limited to a determination of whether the findings and conclusions of the motion court were clearly erroneous.  Rule 24.035; Day v. State, 770 S.W.2d 692, 695 (Mo. banc 1989).  The motion court's findings and conclusions are presumptively correct and will be overturned only when this Court is left with a "definite and firm impression that a mistake has been made" after reviewing the entire record.  Vaca v. State, 314 S.W.3d 331, 334 (Mo. banc 2010).

## Discussion

To obtain an evidentiary hearing for claims related to the ineffective assistance of counsel, the movant must allege facts, not refuted by the record, showing that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney, and that the movant was thereby prejudiced.  State v. Brooks, 960 S.W.2d 479, 497 (Mo. banc 1997) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).  To demonstrate prejudice, the facts alleged must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  State v. Carter, 955 S.W.2d 548, 554 (Mo. banc 1997).

When a defendant enters a guilty plea, the effectiveness of counsel becomes irrelevant except to the extent that it infringes upon the voluntariness and knowledge with which the guilty plea was made.  Muhammad v. State, 367 S.W.3d 659, 661 (Mo. App. E.D. 2012).  Thus, for Young's ineffective assistance of counsel claim to succeed, he must show his plea of guilty was rendered involuntary by the inaction of counsel.  See Lynch v. State, 777 S.W.2d 673, 674 (Mo.

5

App. S.D. 1989). An evidentiary hearing is not required where "the motion and the files and records of the case conclusively show that movant is entitled to no relief." Rule 29.15(h); Morrow v. State, 21 S.W.3d 819, 822 (Mo. banc 2000).

**I.      Young failed to allege facts demonstrating legal coercion.**

In Point One, Young asserts that the motion court clearly erred in denying an evidentiary hearing on his claim that counsel used unreasonable and inherently coercive means to explain information and legal advice. Young argues that his family members had conflicting interests in his case because they are also the family of the victim. Despite this inherent conflict of interest, counsel used Young's family members to help communicate and explain key decisions in his case. Young contends that a diligent and competent attorney would have recognized the conflict of interest in using his family as "interpreters" and therefore would have used a different means to communicate with him. By only using Young's family members to assist in communicating with him, Young asserts that counsel left him open to manipulation and coercion, thereby depriving his guilty plea of its independent and voluntary nature.

In order to claim that a plea was induced by coercion and, thus, not voluntary, a movant "must show wherein and by what mistake, misapprehension, persuasion or holding out of hope which proves to be false or ill-founded." Brown v. State, 755 S.W.2d 414, 416 (Mo. App. E.D. 1988). "If the record conclusively establishes that the accused knowingly and voluntarily pleaded guilty, it is proper to deny an evidentiary hearing on a motion for post-conviction relief based on an allegation that the guilty plea was coerced." Wade v. State, 698 S.W.2d 621, 622 (Mo. App. E.D. 1985).

We have carefully reviewed the record and find that Young does not allege sufficient facts of coercion to require an evidentiary hearing. Young did not allege any specific statements

6

or promises made by his family members or counsel that, even if true, could constitute legal coercion. Instead, Young merely alleged that counsel's decision to involve his family in the case "left [Young] open to manipulation and coercion in entering his plea." An evidentiary hearing is not a discovery tool. The purpose of an evidentiary hearing is not to provide a movant with an opportunity to produce facts not alleged in the motion. White v. State, 939 S.W.2d 887, 904 (Mo. banc 1997). Rather, the purpose of an evidentiary hearing is to determine if the facts alleged in the motion are true. Id. Because Young did not allege facts in his motion demonstrating legal coercion, an evidentiary hearing was not required.

Moreover, we find that the record refutes Young's claim that he was coerced into pleading guilty by counsel or his family. At the plea hearing, the plea court advised Young that no one could force him to plead guilty and specifically questioned Young about whether anybody had done anything to coerce his plea. Young responded no. The plea court also extensively questioned Young to ensure that Young's pleas were knowing and voluntary. The plea court asked Young about whether he understood the nature of the charges against him, the range of punishment he faced, the lack of a plea bargain, and his right to a trial by jury. Young affirmed that he understood those matters and wished to plead guilty to the offenses charged. In addition, plea counsel testified that he was aware of Young's mental challenges, and took the necessary time to explain the ramifications of pleading guilty to Young so that Young understood the consequences of his plea.

Because Young failed to allege facts not refuted by the record that would entitle him to relief, the motion court did not clearly err in denying an evidentiary hearing. See Brooks, 960 S.W.2d at 497. Point One is denied.

7

**II.     Counsel was not ineffective in addressing Young's limited abilities to communicate.**

In Point Two, Young contends that the motion court clearly erred in denying an evidentiary hearing on his claim that counsel was ineffective in failing to take any reasonable measures to address his limited abilities to communicate. Young argues that counsel was aware of advocacy groups for mentally disabled defendants and could have used the services of those groups to help communicate information and advice to him. Instead, Young claims the only measure counsel took to address his disability was using his family members as interpreters. Had counsel reasonably accommodated his disability, Young argues he would have understood the proceedings and, as a result, not pleaded guilty.

To be entitled to an evidentiary hearing on a claim of ineffective assistance of plea counsel, a movant must allege facts, not refuted by the record, showing that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney and that the movant was thereby prejudiced. Morrow, 21 S.W.3d at 823. To satisfy the performance prong, a movant must show by a preponderance of the evidence that counsel's actions fell below an objective standard of reasonableness. Neal v. State, 379 S.W.3d 209, 215 (Mo. App. W.D. 2012). "Reasonableness is looked at in light of all of the circumstances and of the prevailing professional norms at the time of the alleged error." Id. The movant "must overcome the presumptions that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." State v. Simmons, 955 S.W.2d 729, 746 (Mo. banc 1997).

The motion court found that Young failed to allege facts, not refuted by the record, that warrant relief. We are not persuaded that the motion court's conclusion is clearly erroneous. The record establishes that counsel recognized Young's difficulties understanding and

8

communicating with counsel and took the appropriate measures to deal with those limitations. Because her first few meetings with Young were not productive, Ridings used other associates from her firm to meet with Young who were able to communicate with him. Additionally, counsel was aware of Young's limitations and spent additional time explaining information and advice to Young to ensure Young's understanding. The mental competency evaluation performed on Young indicated that, though mentally challenged, Young understood the proceedings against him and was capable of assisting in his own defense. As noted by the motion court, the record supports a finding that Young's condition was not so severe as to prevent Young from communicating with counsel or the trial court without the assistance of an interpreter or aide. Furthermore, we find counsel's decision to utilize Young's family members to help convey important information reasonable and within the bounds of competent representation. Young does not allege that he did not understand information presented through family members or that his family was unable to communicate with him. Young's only claim with regard to the use of family members deals with coercion which we addressed in Point One above.

Because Young failed to demonstrate that counsel's performance fell below an objective standard of reasonableness, the motion court did not clearly err in denying Young's claim without an evidentiary hearing. See Morrow, 21 S.W.3d at 823. Point Two is also denied.

### III. Counsel was not ineffective for failing to challenge the competency determination.

In Point Three, Young asserts that the motion court clearly erred in denying an evidentiary hearing on his claim that counsel was ineffective in failing to contest the determination of competency by the Missouri Department of Mental Health. Young contends that the mental examination was so lacking in rigor that any lawyer exercising reasonable

9

professional care and diligence would have contested the results. Specifically, Young complains that his mental examination failed to include any current assessment of his mental functioning other than a brief interview, and that his diagnosis of mild mental retardation was based in large part on an IQ test from 2003. Young argues that had counsel requested a second examination, he would not have been found competent to stand trial.

It is well established that counsel is not ineffective for failing to request a second mental examination solely because the first examination found the defendant competent. Bass v. State, 950 S.W.2d 940, 947 (Mo. App. W.D. 1997). "Absent perceived shortcomings in the mental evaluation report or any manifestation of mental disease or defect not identified by prior reports, the attorney representing the defendant in a criminal case is not compelled to seek further evaluation." Baird v. State, 906 S.W.2d 746, 749 (Mo. App. W.D. 1995).

Young's criticisms of the mental examination fail to demonstrate that the examination and findings were inadequate, erroneous, or failed to identify a mental disease or defect. We have carefully reviewed the examination report and find no apparent shortcomings. The examiner found that Young meets the criteria for mild mental retardation, but despite that condition, he did not lack mental fitness to proceed. In support of this conclusion, the examiner noted that Young "knows the charges against him, knows the respective titles and functions of the principal courtroom figures, is able to respond to questions in a relevant and coherent manner, and is capable of assisting his attorney in his defense." The examiner acknowledged that Young occasionally expressed himself with a vague and circumstantial speech pattern consistent with mental retardation, but that Young was able to clarify his statements when queried.

10

Young has not alleged any error in the conclusions or opinion of the examiner at the Missouri Department of Mental Health. Nor has he alleged any additional mental disease or defect from which he suffers that would render him incompetent to plead guilty. Instead, Young merely speculates that if additional testing had been done, additional conditions might have been discovered which may have rendered Young incompetent to plead guilty. Such speculation is insufficient to warrant an evidentiary hearing.

The record supports a finding that counsel could reasonably have concluded that the first report was adequate and that Young was competent to plead guilty. Accordingly, the motion court's finding that counsel was not ineffective in failing to seek a second mental examination is not clearly erroneous. Point Three is denied.

## Conclusion

Because Young failed to allege facts not refuted by the record which, if true, would entitle him to relief, the motion court did not clearly err in denying his Rule 24.035 motion without an evidentiary hearing. The judgment of the motion court is affirmed.

Kurt S. Odenwald, Presiding Judge

Robert G. Dowd, Jr., J., Concurs
Gary M. Gaertner, Jr., J., Concurs

11