STATE of Missouri, Respondent,

v.

Richard A. VILLANEUVA, Appellant.

No. WD 62713.

Missouri Court of Appeals,
Western District.

Oct. 26, 2004.

Sarah W. Patel, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Deborah Daniels, Co-Counsel, Jefferson City, for Respondent.

Before SMART, P.J., ELLIS and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

Richard Villaneuva challenges the sufficiency of the evidence to support his conviction and ten-year prison sentence for unlawful possession of a controlled substance with the intent to distribute.[1] We reverse the conviction and enter a judgment of acquittal.

### STANDARD OF REVIEW

Our review of this case is limited to a determination of whether there was sufficient evidence from which a reasonable juror could have found Villaneuva guilty beyond a reasonable doubt. *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. Banc 1998). Applying this standard, we must accept as true all evidence and inferences favorable to the state and disregard all evidence and inferences to the contrary, giving great deference to the trier of fact. *Id.*

### FACTUAL AND PROCEDURAL HISTORY

Viewed in a light most favorable to the prosecution, the following evidence was presented at Mr. Villaneuva's jury trial. On February 2, 2002, the Chariton County Sheriff's Office was conducting surveillance on Highway 24 based on a tip that a dark-colored pickup truck with a trailer camper would be carrying a large amount of drugs. Sheriff's Deputy Brad Morrison saw a truck that matched that description and activated his radar unit. The radar indicated the truck was traveling four miles per hour above the posted speed limit. Deputy Morrison pursued and pulled over the pick-up truck for speeding. He also noticed that the license plate on the camper was expired.

At the time of the stop, Mr. Villaneuva was driving the pick-up truck and his father, Carlos Esparsa, was in the passenger seat. Mr. Villaneuva gave Deputy Morrison his driver's license. Mr. Esparsa explained that he owned the pick-up and camper. As Mr. Esparsa looked through the glove compartment for his vehicle registration and proof of insurance, Corporal Barry Graskewisz of the Missouri Highway Patrol arrived to assist in the stop.

Corporal Graskewisz took Mr. Villaneuva to his patrol car for questioning, while he waited for dispatch information about the truck and camper registrations. Mr. Villaneuva said he and his father were driving to work in the Thomas Hill Lake area. He said they planned to stay in the camper because it would be cheaper than a motel room.

Upon receiving the dispatch information, Corporal Graskewisz informed Deputy Morrison that the camper was registered to Mr. Esparsa but the registration had expired. The truck was not registered, and a check of the vehicle identification number indicated the truck was not owned by Mr. Esparsa or Mr. Villaneuva. Although Mr. Esparsa produced a pink receipt purportedly as registration papers for the truck, the license plate on the truck did not match the one identified on the receipt. Based on these registration discrepancies and the tip that led to the initial highway surveillance, Deputy Morrison summoned the K–9 Unit to check for drugs.

Corporal Graskewisz informed Mr. Villaneuva that a drug dog was being brought to the scene. As they waited in the patrol

---

1. Mr. Villaneuva raises additional points concerning the jury selection and sentencing; however, his challenge to the sufficiency of the evidence is dispositive of the appeal.

car, Mr. Villaneuva cleared his throat several times, appeared uneasy in his seat, and asked the officer to roll the car windows down even though it was cold outside. This conduct led Corporal Graskewisz to believe Mr. Villaneuva was nervous about the impending arrival of the drug dog.

The K–9 unit had the drug dog sniff around the pick-up and camper. The dog alerted to the presence of an illegal substance in the camper. After obtaining a search warrant, the officers unlocked the camper and found clothing that belonged to Mr. Villaneuva and Mr. Esparsa and a blue Igloo cooler. The cooler contained packaged lunch meat, fruit, and a prescription pill bottle with Mr. Esparsa's name on the label. Inside the pill bottle, the officers found eleven small packets of cocaine weighing a total of 12.17 grams.

Mr. Villaneuva was charged with one count of possession of a controlled substance with the intent to distribute in violation of Section 195.211, RSMo.2000. Sometime before Mr. Villaneuva's trial, his father was convicted of possessing the cocaine found in the pill bottle.

At trial, the State presented testimony from the officers who conducted the stop and search of the pick-up truck and camper. The defense filed a motion for judgment of acquittal at the close of the State's evidence. The defense argued that the State failed to present any evidence to prove Mr. Villaneuva's possession of the cocaine recovered from the locked camper trailer. The trial court commented that the evidence was "awful thin" but decided to deny the motion and "see what the jury thinks." The defense presented no evidence. The jury found Mr. Villaneuva guilty of cocaine possession with the intent to distribute. He was sentenced to a ten-year prison term.

## ISSUE ON APPEAL

Mr. Villaneuva contends the trial court erred in denying his motion of judgment of acquittal because the evidence was insufficient to prove that he knowingly possessed the cocaine found in his father's prescription pill bottle. Based on the State's failure to prove each element of the charged offense beyond a reasonable doubt, Mr. Villaneuva seeks reversal of the conviction and discharge from his ten-year sentence. *State v. Grim*, 854 S.W.2d 403, 411 (Mo. banc 1993).

 To convict Mr. Villaneuva under Section 195.211.1, the State was required to prove that he possessed the cocaine and had the intent to distribute it. Possession must be established by showing: (1) conscious and intentional possession of the substance, either actual or constructive; and (2) an awareness or knowledge of the presence and nature of the substance. *State v. Purlee*, 839 S.W.2d 584, 587 (Mo. banc 1992). Both possession and knowledge may be proven by circumstantial evidence. *Id.*

 Where there is no evidence of actual possession, constructive possession may be shown if the facts support an inference that the defendant had knowledge of the presence of the controlled substance.[2] *Id.* at 588. Thus, at a minimum, constructive possession requires a showing of the defendant's access to and control over the premises where the substance

---

**2.** A person has actual possession if the substance is on his person or within easy reach and convenient control. *State v. Johnson*, 81 S.W.3d 212, 215 (Mo.App.2002). Constructive possession arises when a person, although not in actual possession, has the power and intention to exercise dominion or control over the substance either directly or through other persons. *Id.*

was found. *Id.* A defendant's exclusive control over the premises is sufficient to raise an inference of possession and knowledge. *Id.* However, joint control of the premises requires further evidence to prove the defendant knew the substance was present and had it under his control. *Id.*

■■ In cases where there is joint control of an automobile, a defendant is deemed to have possession and control where there is additional evidence connecting him with the controlled substance. *State v. Johnson,* 81 S.W.3d 212, 215 (Mo. App.2002). Such additional evidence may include: the presence of a large quantity of drugs in the vehicle; the defendant's routine access to the area where the drugs were found; nervousness exhibited during the search of the area; the existence of the drugs in plain view; the commingling of the drugs with the defendant's personal belongings; and the defendant's conduct and statements. *Id.* "The totality of the circumstances is considered in determining whether sufficient additional incriminating circumstances have been proven." *Id* at 216.

■ The State's charge was based on a theory that Mr. Villaneuva constructively possessed the cocaine found inside the camper. The State argues the camper was under the joint control of the defendant and his father, and that the following additional evidence was presented to prove Mr. Villaneuva's awareness of and access to the controlled substance: (1) he was living in the camper; (2) his clothing was found in the camper, as well as fresh food in the cooler; and (3) he became nervous when he learned the camper would be searched by drug dogs. We disagree that this evidence was sufficient to prove Mr. Villaneuva's conscious and intentional possession of the cocaine.

Contrary to the State's first argument, there was no evidence that Mr. Villaneuva had lived in the camper at anytime prior to the traffic stop. The arresting officer testified only that the defendant said he planned to live in the trailer with his father once they reached the job site. This testimony regarding the defendant's future plans did not establish that he had routine access to the camper or knowledge of what was stored therein. Most importantly, the officer's testimony failed to establish any connection between Mr. Villaneuva and the cooler and prescription pill bottle in which the drugs were concealed.

The State also has failed to explain how the presence of "fresh food" in the cooler proves that Mr. Villaneuva had access to and knowledge of the contraband found therein. Based on the items recovered from the cooler, the only reasonable inference is that Mr. Esparsa was linked to the drugs because his name was on the label of the prescription pill bottle in which the drugs were found. Nor does the presence of Mr. Villaneuva's clothing in the camper indicate that he knew about the hidden cocaine. The jury could infer from the clothing that the defendant may have had access to the camper, but more evidence was required to link him to the packaged contraband concealed in the cooler. The clothing was in no way commingled with the cooler or its contents, and there is no evidence that anything related to drug activity was found in plain view in the camper.

■ Bereft of any other evidence connecting Mr. Villaneuva to the cocaine, the State can not merely rely on his nervousness as the sole factor justifying the guilty verdict. While nervous conduct may be probative of the defendant's awareness of drugs, such conduct alone is not sufficient evidence to prove the defendant's unlawful possession. *Johnson,* 81

S.W.3d at 216. "Nervousness is one incriminating fact that will support a conviction only if consistent with the totality of the circumstances." *Id.*

Even viewed in a light most favorable to the State, the totality of the evidence is insufficient to prove beyond a reasonable doubt that Mr. Villaneuva had conscious and intentional possession of the cocaine hidden in his father's prescription pill bottle. The State proved only that the defendant may have had joint access to the camper by virtue of the fact that his clothes were found inside and he was driving the truck with the camper in tow. Such joint access to the premises does not establish that Mr. Villaneuva knew of the presence of drugs or had them under his control. *Purlee,* 839 S.W.2d at 588. The State failed to meet its burden of producing additional evidence to establish the defendant's constructive possession of the contraband concealed inside the cooler and prescription pill bottle.

The trial court erred in denying the motion for judgment of acquittal. We reverse the conviction and enter a judgment of acquittal discharging the defendant.

All concur.