

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI, )
)
        Respondent, )
)
v. ) No. SC95194
)
LUIS ZETINA-TORRES, )
)
        Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF SALINE COUNTY
The Honorable Dennis A. Rolf, Judge

### *Opinion issued March 1, 2016*

Luis Zetina-Torres (hereinafter, "Appellant") appeals from the circuit court's judgment convicting him of one count of second-degree drug trafficking, section 195.223.9(2), RSMo 2000.[1] Appellant raises two points on appeal, challenging the sufficiency of the evidence to support his conviction and instructional error. This Court holds there was sufficient evidence to support Appellant's conviction and there was no instructional error. The circuit court's judgment is affirmed.[2]

### Factual and Procedural History

On July 16, 2010, Missouri State Highway Patrol Sergeant Brooks McGinnis (hereinafter, "Sgt. McGinnis") was working a "ruse" drug checkpoint on Interstate 70 in

---

[1] All statutory references are to RSMo 2000 as supplemented.

[2] This Court transferred this case after an opinion by the Missouri Court of Appeals, Western District. Mo. Const. art. V, sec. 10. Portions of the court of appeals opinion are incorporated without further attribution.

Saline County at the Route EE and K exit. This operation entailed placing signs on the interstate informing drivers that a drug checkpoint was ahead when, in fact, no checkpoint existed. The informational signs were in English and Spanish. Sgt. McGinnis testified that the purpose of the "ruse" checkpoint is to try to elicit enough panic in drug traffickers that they exit the interstate early and draw attention to themselves. Interstate 70 was selected because it is a known drug corridor, and the signs were placed prior to a specific exit because it contained no services for motorists that would justify exiting the interstate prior to the "ruse" drug checkpoint.

While conducting this operation, Sgt. McGinnis observed a black Nissan truck exit the interstate and travel north on Route EE. Sgt. McGinnis followed the truck approximately thirteen miles until it reached the city limits of Marshall, Missouri. At the city limit, the speed limit dropped, and the truck failed to adjust its speed. Sgt. McGinnis stopped the truck for a speeding violation.

Two men were inside the truck. Appellant was the driver, and the passenger was Roberto Maldonado-Echeverria (hereinafter, "Maldonado").[3] Sgt. McGinnis explained the speeding violation, and Appellant apologized several times. Both men in the truck appeared nervous and avoided eye contact when speaking to Sgt. McGinnis. There was an overwhelming odor of a cologne-type air freshener, which Sgt. McGinnis testified typically is used as a masking agent to cover the odor of illegal drugs. Further, Sgt. McGinnis noticed there was a single key in the ignition. This was significant

---

[3] The record below contains various spellings of Roberto Maldonado-Echeverria's name; however, he is referred to primarily as "Maldonado." For ease of clarity, this Court refers to him in the same manner and intends no disrespect.

because in Sgt. McGinnis' experience, drug traffickers often use a single key because they do not want their personal keys passed off when they deliver the vehicle to another person.

Sgt. McGinnis asked for Appellant's license, registration, and proof of insurance. Appellant produced a Sonora, Mexico, driver's license. Appellant stated he borrowed the truck from his friend, Mardonio. The truck was registered to Benitez Mardonio Cardova,[4] who resided at 7100 Longview Road in Kansas City (hereinafter, "the Kansas City address"). The insurance card listed Mardonio Cardova Benitez and Hugo Rivera as the insured parties for the truck. Maldonado produced a Mexican consular card for identification, but did not have a valid driver's license. Maldonado kept yawning, which Sgt. McGinnis was trained to recognize as a possible sign of nervousness.

Appellant exited the truck and went to the patrol car so that Sgt. McGinnis could conduct computer checks on both men and the truck. Sgt. McGinnis spoke to Appellant while he conducted the computer checks and had no difficulty communicating with Appellant.[5] Appellant told Sgt. McGinnis they were going to Marshall to pick up another truck from a friend and, then, they were going to take it back to Kansas City to work on the engine. Appellant did not identify his friend. Appellant referred to Maldonado as "Berto" and stated he had known Berto for a year, but he did not know Berto's last name or what he did for a living, although he did know Berto was not a mechanic. The

---

[4] The documents seized during the search contained different spellings and combinations of the names "Benitez," "Mardondio," and "Cardova."

[5] Appellant was provided a Spanish-speaking translator during the lower court proceedings.

3

computer check revealed Maldonado's license was suspended and there was a warrant out for his arrest. When Sgt. McGinnis told Appellant about Maldonado's suspended license, Appellant said Maldonado was just along for the ride. Throughout the conversation, Appellant was nervous, avoided eye contact by looking out of the patrol car window, and gave delayed answers as though he was trying to remember certain information.

Sgt. McGinnis then asked Appellant if there were any drugs or weapons in the truck, and Appellant replied, "No, you can check." Sgt. McGinnis confirmed that Appellant gave consent to search the truck. Prior to conducting the search, Sgt. McGinnis returned to the truck to speak to Maldonado. Maldonado told Sgt. McGinnis they were going to Sedalia to see one of Appellant's friends. Maldonado said he had known Appellant for two or three months and that he did not know the name of Appellant's friend in Sedalia. Maldonado did not mention anything about picking up a truck to do engine repairs.

Sgt. McGinnis then conducted a search of the truck. The tailgate was locked despite containing an open truck bed, and the bed liner was sticking out of the rail lip. Sgt. McGinnis moved the bed liner and found a package behind the bed liner that contained 438.74 grams of wet methamphetamine, indicating it was "fairly fresh." The drugs had a wholesale value of $20,000 and a street value of approximately $43,000.

Both men were arrested, and Sgt. McGinnis completed his search. Sgt. McGinnis seized a laptop, the men's cellular telephones, and a GPS device. The GPS device was mounted on the passenger side of the truck and contained an address in Sedalia and the

4

Kansas City address. A text message on Appellant's prepaid cellular telephone also contained the Kansas City address. Appellant's wallet contained a bank card belonging to Mardonio Cardova Benitez and a Money Gram reward card belonging to Mardonio Cordova-Benitez. Several documents inside the passenger door pocket contained the same names.

Appellant was indicted on September 27, 2010. The indictment charged Appellant with acting alone or knowingly in concert with another person to commit first-degree drug trafficking by transporting ninety grams or more of methamphetamine. Appellant and Maldonado were tried separately. At Appellant's July 2011 jury trial, a criminalist testified Appellant's fingerprint matched that of Mardonio Cardova Benitez. The booking photographs of Appellant and Mardonio Cardova Benitez, which closely resembled each other, were also introduced into evidence. This evidence was used to demonstrate Appellant was the actual owner of the truck and Appellant had knowledge of the methamphetamine hidden in the bed liner. Appellant testified at trial that he was arrested previously and mistakenly booked as Mardonio Cardova Benitez. Appellant was convicted of second-degree trafficking and sentenced to serve a life sentence.

On appeal, Appellant challenged the sufficiency of the evidence to support his conviction, raising allegations of error concerning the state's discovery violations and the circuit court's refusal to grant Appellant a continuance because of the discovery violations. The court of appeals found there was sufficient evidence to convict Appellant of second-degree trafficking, but the court reversed and remanded the case due to the

state's discovery violations and the circuit court's error in refusing to grant Appellant a continuance. *State v. Zetina-Torres*, 400 S.W.3d 343, 357-60 (Mo. App. W.D. 2013).[6]

Appellant was retried in February 2014. The evidence was substantially similar to the evidence presented in his first trial and to the evidence presented at Maldonado's trial. However, Appellant's second trial differed from the first in that the second case was submitted on a theory of accomplice liability and required the jury to find Appellant guilty if it concluded that, with the purpose of promoting or furthering the commission of second-degree trafficking, Appellant acted together with or aided Maldonado in committing that offense. Appellant was convicted of second-degree trafficking and now appeals this conviction.

### Sufficiency of the Evidence

Appellant argues the circuit court erred in overruling his motion for judgment of acquittal at the close of the evidence because there was insufficient evidence to prove beyond a reasonable doubt he was guilty of second-degree trafficking. Appellant argues there was insufficient evidence presented that he possessed, had knowledge of, or was aware of the presence of the methamphetamine hidden under the truck's bed liner or that

---

[6] Maldonado had a bench trial in October 2011. The circuit court found Maldonado guilty of second-degree trafficking and sentenced him to twenty-five years' imprisonment. On appeal, Maldonado challenged the sufficiency of the evidence to support his conviction, specifically arguing there was insufficient incriminating evidence to show he had knowledge and control of the methamphetamine hidden in the bed liner. After considering the totality of the circumstances, the court of appeals reversed Maldonado's conviction, finding there was insufficient evidence to permit the inference that he had knowledge and control of the methamphetamine. *State v. Maldonado-Echieverra*, 398 S.W.3d 61, 68 (Mo. App. W.D. 2013).

Appellant acted together with or aided Maldonado in committing second-degree trafficking.

***Standard of Review***

To determine whether the evidence presented was sufficient to support a conviction and to withstand a motion for judgment of acquittal, this Court does not weigh the evidence but, rather, "accept[s] as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignore[s] all contrary evidence and inferences." *State v. Holmes*, 399 S.W.3d 809, 812 (Mo. banc 2013) (quoting *State v. Latall*, 271 S.W.3d 561, 566 (Mo. banc 2008)). "This Court's review is limited to determining whether there was sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Letica*, 356 S.W.3d 157, 166 (Mo. banc 2011). "This is not an assessment of whether this Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder 'could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011).

***Second-Degree Drug Trafficking***

Section 195.223.9 states a person commits second-degree drug trafficking if he or she possesses or has under his or her control, purchases or attempts to purchase, or brings into this state more than thirty grams of any material, compound, mixture or preparation that contains any quantity of methamphetamine. A defendant commits a class A felony if

7

the quantity involved is ninety grams or more but less than four hundred fifty grams.

Section 195.223.9(2). "Possessed" or "possessing a controlled substance" is defined as:

> a person, with the knowledge of the presence and nature of a substance, has actual or constructive possession of the substance. A person has actual possession if he [or she] has the substance on his [or her] person or within easy reach and convenient control. A person who, although not in actual possession, has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it. Possession may also be sole or joint. If one person alone has possession of a substance possession is sole. If two or more persons share possession of a substance, possession is joint[.]

Section 195.010(34).

"To prove possession of a controlled substance, the state must show conscious and intentional possession of the substance, either actual or constructive, and awareness of the presence and nature of the substance." *State v. Stover*, 388 S.W.3d 138, 146-47 (Mo. banc 2012). Possession and knowledge may be proved by circumstantial evidence. *State v. Fuente*, 871 S.W.2d 438, 442 (Mo. banc 1994). "Absent proof of actual possession, constructive possession may be shown when other facts buttress an inference of defendant's knowledge of the presence of the controlled substance." *State v. Purlee*, 839 S.W.2d 584, 588 (Mo. banc 1992). "Thus, proof of constructive possession requires, at a minimum, evidence that defendant had access to and control over the premises where the substance was found." *Id.* Exclusive control of the premises raises an inference of possession and control of the substance. *Stover*, 388 S.W.3d at 147.

Here, both Appellant and Maldonado were in the truck with the methamphetamine. When joint control of the premises or vehicle exists, the state is

8

required to demonstrate "some further evidence or admission connecting the accused with the illegal drugs." *Purlee*, 839 S.W.2d at 588. There are several additional incriminating circumstances that would support an inference of a defendant's knowledge and control of the controlled substance when joint possession exists:

Finding a large quantity of drugs in the vehicle;

Finding drugs having a large monetary value in the vehicle;

Easy accessibility or routine access to the drugs;

The odor of drugs in the vehicle;

The presence of the defendant's personal belongings in close proximity to the drugs;

Making false statements in an attempt to deceive the police;

The defendant's nervousness during the search;

The defendant's flight from law enforcement;

The presence of drugs in plain view;

Other conduct and statements made by the accused; and

The fact that the defendant rented the vehicle.

*Stover*, 388 S.W.3d at 147 (quoting *State v. Woods*, 284 S.W.3d 630, 640 (Mo. App. W.D. 2009)).

Appellant contends that mere ownership of the truck is insufficient to convict him. Appellant also argues he made no statements indicating consciousness of guilt. Appellant points out the state did not show any commingling of his personal items with drugs, there were no drugs in plain view, and Appellant consented to a search. However,

9

this Court must look to all of the factors and the totality of the circumstances to analyze whether additional incriminating circumstances sufficiently connected Appellant to the methamphetamine hidden under the truck's bed liner. *Stover*, 388 S.W.3d at 147.

Based on the evidence presented at trial, the state met its burden to show additional incriminating circumstances to support an inference of Appellant's knowledge and control over the methamphetamine after examining the totality of the circumstances. A substantial quantity of methamphetamine with a large monetary value was found in the truck. As the truck's owner and operator, it was reasonable for a jury to infer that Appellant had easy access to the bed liner where the methamphetamine was found. Once Sgt. McGinnis stopped the truck, he detected a strong cologne-like air freshener odor that, in his experience, was used as a masking agent for the drugs. Appellant made numerous false statements to Sgt. McGinnis. Appellant and Maldonado gave inconsistent statements about their destination, the purpose of the trip, and the length of their acquaintance. Appellant also lied about the truck's ownership. Both men exhibited signs of nervousness, avoided eye contact, and Maldonado became extremely agitated when Sgt. McGinnis searched the truck. Further, there was other conduct supporting an inference of knowledge and control over the methamphetamine in that Appellant used a single key and he succumbed to the "ruse" checkpoint by exiting the interstate prior to the checkpoint while traveling on a known drug corridor.

The record contained substantial evidence linking Appellant to the methamphetamine in the truck's bed liner beyond his ownership and mere presence in the vehicle. The circuit court did not err in overruling Appellant's motion for judgment of

10

acquittal on the basis of insufficient evidence because the state proved all of the elements for second-degree trafficking under section 195.223.9.

*Accomplice Liability*

In the same point, Appellant argues the circuit court erred in overruling his motion for judgment of acquittal because the state failed to prove he acted together with or aided Maldonado in committing second-degree trafficking. Appellant contends that the state submitted the case on the theory of accomplice liability and that the verdict director required the jury to find either Appellant or Maldonado possessed the methamphetamine and Appellant acted together with or aided Maldonado in committing second-degree trafficking. Appellant argues that the fact that Maldonado's conviction was vacated demonstrates there was insufficient evidence to support a finding that the two men acted together with or aided one another to commit second-degree trafficking.

Appellant's motion for judgment of acquittal argued the state failed to prove the elements of the crime alleged in the information and that the evidence was insufficient as a matter of law to support a finding of guilt. Neither Appellant's motion for judgment of acquittal nor the motion for new trial contained any specific allegation that the state failed to prove Appellant acted together with or aided Maldonado to commit second-degree trafficking. While the better practice is to preserve specific claims of error for review, arguments concerning sufficiency of the evidence, even those not preserved for appeal, are reviewed on the merits, not for plain error. *State v. Claycomb*, 470 S.W.3d 358, 362 (Mo. banc 2015).

Section 562.041.1(2) states:

11

> A person is criminally responsible for the conduct of another when … either before or during the commission of an offense with the purpose of promoting the commission of an offense, [one] aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense.

The doctrine of accomplice liability embodied in section 562.041.1(2) "comprehends any of a potentially wide variety of actions intended by an individual to assist another in criminal conduct." *State v. Barnum*, 14 S.W.3d 587, 591 (Mo. banc 2000). The evidence need not show the defendant personally committed every element of the crime to be convicted. *Id.* "[A]ny evidence that shows affirmative participation in aiding the principal to commit the crime is sufficient to support a conviction." *State v. Wurtzberger*, 40 S.W.3d 893, 896 (Mo. banc 2001) (quoting *State v. Clay*, 975 S.W.2d 121, 139 (Mo. banc 1998)). Moreover, "[a]ll persons who act together with a common intent and purpose in the commission of a crime are equally guilty." *State v. Cella*, 32 S.W.3d 114, 118 (Mo. banc 2000).

The United States Supreme Court recently held that when examining a sufficiency challenge, "[t]he reviewing court considers only the 'legal' question 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Musacchio v. United States*, No. 14-1095, 2016 WL 280757 at *5 (U.S. 2016) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979)). However, '[a] reviewing court's limited determination on sufficiency review thus does not rest on how the jury was instructed." *Id.* Accordingly, this Court will review

12

Appellant's claim based upon how the crime was charged rather than examine the verdict director as Appellant urges.[7]

Here, Appellant was charged with acting alone or knowingly in concert with Maldonado to commit first-degree drug trafficking by transporting ninety grams or more of methamphetamine. Much of the evidence demonstrating Appellant's possession of the methamphetamine equally supports a finding Maldonado possessed the methamphetamine, including: a substantial quantity of methamphetamine with a large monetary value was found in the truck; a strong cologne-like air freshener odor used as a masking agent; multiple false statements made during the traffic stop; displays of nervousness and avoiding eye contact; and Maldonado's extreme agitation after Appellant consented to Sgt. McGinnis searching the truck. Further, it was reasonable for a jury to infer that Maldonado was directing or navigating Appellant's driving route for delivery because the GPS device was mounted on the passenger side in Maldonado's clear view.

Appellant's argument that Maldonado's conviction was vacated is immaterial because it does not take into account section 562.046(1), which states:

> It is no defense to any prosecution for an offense in which the criminal responsibility of the defendant is based upon the conduct of another that [s]uch other person has been acquitted or has not been convicted or has been convicted of some other offense or degree of offense or lacked criminal capacity or was unaware of the defendant's criminal purpose or is immune from prosecution or is not amenable to justice[.]

---

[7] The United States Supreme Court was careful to point out that its opinion did "not suggest that an erroneous jury instruction cannot result in reversible error just because the evidence was sufficient to support a conviction." *Id*. at *5, n.2.

Thus, Maldonado's vacated conviction had no bearing on the state's ability to submit an accomplice liability theory to the jury or to posit, in the alternative, that Maldonado possessed the methamphetamine as an element in the verdict director.

Within the context of sufficient evidence demonstrating Maldonado possessed the methamphetamine, the record amply supports a finding that Appellant acted together with or aided Maldonado in committing second-degree drug trafficking. Appellant provided his vehicle to transport the methamphetamine and drove along the route Maldonado suggested. Appellant exited prior to the "ruse" checkpoint and made multiple false statements to Sgt. McGinnis to avoid detection. These actions constituted sufficient evidence to submit the case on an accomplice liability theory. The circuit court did not err in overruling Appellant's motion for judgment of acquittal on these grounds.

**Instructional Error**

Appellant alleges the circuit court erred in submitting Jury Instruction No. 6 to the jury, which alleged Maldonado possessed the drugs and that Appellant "acted together with or aided [Maldonado]" in committing that offense. Appellant argues this instruction misled and confused the jury because there was no evidence Appellant acted together with or aided Maldonado in committing second-degree trafficking and this was a disputed element at trial. Appellant reiterates Maldonado's conviction was vacated on appeal because there was insufficient evidence that Maldonado possessed the drugs on substantially similar evidence.

*Standard of Review*

When reviewing claims of instructional error, this Court will reverse the circuit court's decision only if the instructional error misled the jury and, thereby, prejudiced the defendant. *Nash*, 339 S.W.3d at 511. "[R]eversal is only warranted when the instructional error is so prejudicial that it deprived the defendant of a fair trial." *Id.* at 511-12 (quoting *State v. Anderson*, 306 S.W.3d 529, 534 (Mo. banc 2010)). Prejudice occurs when an erroneous instruction may have influenced the jury adversely. *State v. Belton*, 153 S.W.3d 307, 310 (Mo. banc 2005). However, there is no prejudice if an instruction is an accurate statement of law and supported by the evidence. *State v. Avery*, 275 S.W.3d 231, 233 (Mo. banc 2009).

Appellant did not object to Jury Instruction No. 6 at trial or raise any issue regarding the instruction in his motion for new trial. Accordingly, this allegation of error has not been preserved for appeal. Appellant requests plain error review. When the unpreserved allegation concerns instructional error, plain error exists when it is clear that the circuit court has so misdirected or failed to instruct the jury that manifest injustice or miscarriage of justice has resulted. *State v. Ousley*, 419 S.W.3d 65, 75 (Mo. banc 2013).

*Jury Instruction No. 6*

Jury Instruction No. 6, the verdict director, stated in pertinent part:

A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with the other person with the common purpose of committing that offense or if, for the purpose of committing that offense, he aids or encourages the other person in committing it.

If you find and believe from the evidence beyond a reasonable doubt:

15

First, that on or about July 16, 2010, in the County of Saline, State of Missouri, the defendant or [Maldonado] possessed 90 grams or more of any material or mixture containing any quantity of methamphetamine, a controlled substance, and

Second, that defendant knew or was aware of the presence and nature of the controlled substance,

then you are instructed that the offense of trafficking in the second degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Third, that with the purpose of promoting or furthering the commission of that trafficking in the second degree, the defendant acted together with or aided [Maldonado] in committed that offense,

then you will find the defendant guilty of trafficking the second degree.

"A verdict-directing instruction must contain each element of the offense charged and must require the jury to find every fact necessary to constitute essential elements of [the] offense charged." *State v. Cooper*, 215 S.W.3d 123, 125 (Mo. banc 2007) (quoting *State v. Doolittle*, 896 S.W.2d 27, 30 (Mo. banc 1995)). "A violation of due process arises when an instruction relieves the State of its burden of proving each and every element of the crime and allows the State to obtain a conviction without the jury deliberating on and determining any contested elements of that crime." *Cooper*, 215 S.W.3d at 126. "Plain error exists when an instruction omits an essential element and the evidence establishing the omitted element was seriously disputed." *Stover*, 388 S.W.3d at 154.

Appellant does not dispute Jury Instruction No. 6 was in the proper form, only that it required the jury to find he acted together with or aided Maldonado when there was

insufficient evidence to support its submission. However, as stated previously, there was sufficient evidence to demonstrate either Appellant or Maldonado had knowledge and control over the methamphetamine in the truck and that a jury could reasonably infer Appellant acted together with or aided Maldonado to commit second-degree drug trafficking. Finally, Maldonado's vacated conviction is inconsequential because section 562.046(1) provides Appellant with no defense to these charges. The circuit court did not plainly err in submitting Jury Instruction No. 6 to the jury.

### Conclusion

The circuit court's judgment is affirmed.

_____
GEORGE W. DRAPER III, JUDGE

All concur.

17