

# In the
# Missouri Court of Appeals
# Western District

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent, | ) WD82708 |
| | ) |
| v. | ) OPINION FILED: August 18, 2020 |
| | ) |
| MELISSA ANN GLAZE, | ) |
| | ) |
| Appellant. | ) |

**Appeal from the Circuit Court of Saline County, Missouri**
The Honorable Dennis A. Rolf, Judge

Before Division Four: Cynthia L. Martin, Chief Judge, Presiding, Alok Ahuja, Judge and
Thomas N. Chapman, Judge

Melissa Glaze ("Glaze") appeals from the trial court's entry of judgment convicting

her of possession of a controlled substance in violation of section 579.015[1] and of unlawful

possession of drug paraphernalia in violation of section 579.074 following a bench trial.

Glaze challenges the sufficiency of the evidence to support her convictions. Finding no

error, we affirm.

---

[1]All statutory references are to RSMo 2016 as amended through August 10, 2017, unless otherwise indicated.

## Factual and Procedural Background[2]

On August 10, 2017, the Missouri State Highway Patrol conducted aerial speed enforcement near the 69 mile marker on Interstate 70 in Saline County, Missouri. At approximately 1:00 P.M., the pilot notified Corporal Dennis Mathes ("Corporal Mathes"), who was staged nearby in his patrol car, that a charcoal Jeep SUV was traveling 84 miles per hour. As Corporal Mathes approached the Jeep SUV, he passed a Honda Accord that was also speeding. Corporal Mathes activated the patrol car's lights and pulled over the Jeep SUV. He exited his patrol car and motioned for the driver of the Honda Accord to pull over. However, the Honda Accord kept going. Corporal Mathes approached the Jeep SUV and told the driver to stay where he was while Corporal Mathes pursued the Honda Accord. While Corporal Mathes was speaking to the driver of the Jeep SUV, he noticed that Glaze was leaning forward in the front passenger seat, looking down toward the passenger floorboard.

Corporal Mathes returned to his patrol car to pursue and stop the Honda Accord. While Corporal Mathes was speaking to the driver of the Honda Accord, he heard a radio report that a vehicle pursuit had begun. Corporal Mathes abandoned the stop of the Honda Accord and left to assist in the pursuit, which involved the Jeep SUV.

The driver of the Jeep SUV had initially followed Corporal Mathes's instruction to remain stopped on the side of the road. However, after a few minutes, the pilot of the aerial

[2]When reviewing a conviction following a bench trial for sufficiency of the evidence, we view the evidence in the light most favorable to the verdicts. *State v. Martin*, 575 S.W.3d 764, 766 n.1 (Mo. App. W.D. 2019).

speed enforcement plane observed the Jeep SUV driving away after making a U-turn through a ditch onto the south outer road.

Trooper Nathan Wallace ("Trooper Wallace") stopped the Jeep SUV at a truck stop. Trooper Wallace immediately took the driver and Glaze into custody. Another officer, Corporal Liere Dancy ("Corporal Dancy"), arrived at the scene and placed Glaze in her patrol car. Corporal Dancy asked Glaze for identification. Glaze advised that her identification was in her purse, located on the front passenger floorboard. Glaze also indicated that a tote bag containing snacks and beer, which was also located on the front passenger floorboard, was hers. Corporal Dancy retrieved the purse from the Jeep SUV's passenger floorboard for Glaze.

Corporal Mathes and Trooper Wallace searched the Jeep SUV. Trooper Wallace searched the vehicle's passenger side, where he found a small black bag[3] on the front passenger floorboard. The black bag was readily visible, and was found with the food and beer Glaze had reported as her belongings. Inside the bag, Trooper Wallace found a bandana wrapped around a "glass smoking pipe with white crystal residue within it," a metal spoon, syringes and syringe caps, and cotton balls. Also in the bag was an Excedrin bottle containing methamphetamine.

The State charged Glaze as a prior and persistent offender with one count of possession of a controlled substance in violation of section 579.015 and one count of

---

[3]The State characterizes the small black bag as a makeup bag. Glaze takes issue with that characterization, arguing that there was no makeup found in the bag, and that the State is mischaracterizing the evidence in an effort to connect the bag to Glaze rather than the male driver of the vehicle. There is no need to settle this debate, as there was sufficient evidence to support Glaze's convictions regardless the bag's characterization.

unlawful possession of drug paraphernalia in violation of section 579.074. A bench trial was held on July 13, 2018.

The evidence established that the Excedrin bottle contained 5.58 grams of methamphetamine. Corporal Mathes testified that the items found in the small black bag were consistent with intravenous injection of methamphetamine, and that approximately .25 gram of methamphetamine is typically used to get high. Corporal Mathes testified that the driver had been asked about the contents of the vehicle, and had accepted responsibility for all items inside the vehicle except Glaze's personal belongings, specifically mentioning her purse.

Corporal Mathes testified about Glaze's appearance on August 10, 2017. He described Glaze's appearance as "skin-and-bones," consistent with other heavy methamphetamine users with whom he has interacted during his career. He also testified that Glaze was wearing a long sleeve shirt, despite the fact it was August, consistent with an attempt to cover track marks from the intravenous injection of methamphetamine. Corporal Mathes testified that Glaze's face looked fuller at trial than it did at the time of her arrest.

A video of Glaze sitting inside Corporal Liere Dancy's ("Corporal Dancy") patrol car during the search of the Jeep SUV was admitted into evidence.[4] Corporal Dancy testified that Glaze appeared "[e]xtremely nervous" during the search of the vehicle.

---

[4]The video was admitted into evidence to assess Glaze's nervousness during the search.

4

At the conclusion of the State's evidence, Glaze moved for judgment of acquittal, arguing that the State failed to prove that Glaze had possession of the black bag found on the front passenger floorboard of the Jeep SUV. The trial court denied the motion. The trial court found Glaze guilty as charged.[5] The trial court sentenced Glaze to twelve years' incarceration for the possession of a controlled substance charge and ten days in jail for the unlawful possession of drug paraphernalia charge.

Glaze appeals.

## Standard of Review

"When reviewing the sufficiency of the evidence, the standard of review on appeal from a bench-tried case is the same as the standard used on appeal of a case tried to a jury." *State v. Shaw*, 592 S.W.3d 354, 357 (Mo. banc 2019). When reviewing the sufficiency of the evidence to support a conviction and a trial court's denial of a motion for judgment of acquittal, our task is to determine whether sufficient evidence was presented at trial to permit a reasonable fact finder to find the defendant's guilt beyond a reasonable doubt. *Id.* In reviewing the sufficiency of the evidence, we do not reweigh the evidence, and the test is not whether we believe the evidence established the defendant's guilt beyond a

---

[5]Prior to trial, Glaze filed a request for findings of fact and conclusions of law pursuant to Rule 73.01. Rule 73.01 is located within the Missouri Rules of Civil Procedure, and there is no parallel rule located in the Missouri Rules of Criminal Procedure. *See State v. Renfrow*, 495 S.W.3d 840, 850 n.2 (Mo. App. W.D. 2016) (Ahuja, J., dissenting) (recognizing that "there is no analogue to Rule 73.01(c) in Missouri's rules of criminal procedure"). After the pronouncement of its verdict, the trial court noted that Rule 73.01(c) is a rule of civil procedure, not criminal procedure. The trial court nevertheless verbally explained its verdict at the renewed request of Glaze's counsel. The trial court explained that in determining that Glaze was in possession of the small black bag, it gave weight to the fact that Glaze's appearance was consistent with a methamphetamine user; to the fact that the black bag was easily accessible to Glaze and next to her belongings; to the fact that Glaze looked at the floorboard when the Jeep SUV was first pulled over; to the fact that Glaze appeared nervous and distraught on a video of Glaze in Corporal Dancy's vehicle during the search of the Jeep SUV; and to the fact that Glaze did not appear surprised when she was arrested but instead acted as though she anticipated being arrested.

All rule references are to the Missouri Supreme Court Rules (2018), unless otherwise indicated.

reasonable doubt. *State v. Gehring*, 599 S.W.3d 526, 529 (Mo. App. W.D. 2020). Instead, we view the evidence in the light most favorable to the verdict, disregarding all contrary evidence and reasonable inferences, in order to determine whether "any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt." *State v. Marley*, 598 S.W.3d 204, 208-09 (Mo. App. W.D. 2020) (quoting *State v. Stewart*, 560 S.W.3d 531, 533 (Mo. banc 2018)).

**Analysis**

Glaze presents a single point on appeal, challenging the sufficiency of the evidence to support her convictions for possession of a controlled substance and unlawful possession of drug paraphernalia. Glaze argues that the trial court erred in overruling her motion for judgment of acquittal at the close of the evidence and finding Glaze guilty because the State failed to present sufficient evidence that Glaze had knowledge of, and an intent to exercise control over, the methamphetamine and drug paraphernalia found in the vehicle.[6]

Section 579.015.1 provides that "[a] person commits the offense of possession of a controlled substance if he or she *knowingly possesses* a controlled substance." (Emphasis added.) Section 579.074.1 provides:

> A person commits the offense of unlawful possession of drug paraphernalia if he or she *knowingly* uses, or *possesses* with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack,

---

[6]By challenging the sufficiency of the evidence to support two separate convictions in a single point relied on, Glaze's point on appeal is multifarious in violation of Rule 84.04(d)(1), and thus is unpreserved for appeal. *See State v. Leonard*, 490 S.W.3d 730, 736 (Mo. App. W.D. 2016) (concluding a point relied on that challenged the sufficiency of the evidence to support three convictions was impermissibly multifarious). Nonetheless, we have exercised our discretion to review Glaze's claims of error on appeal, despite the violation of Rule 84.04(d)(1), given our preference to decide cases on the merits when the argument is readily understandable, as is the case here. *See id.*

6

store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body, a controlled substance or an imitation controlled substance . . . .

(Emphasis added.) We "employ the same analysis when reviewing the question of whether [a defendant] possessed drug paraphernalia as when determining whether [a defendant] possessed a controlled substance." *Gehring*, 599 S.W.3d at 529 (quoting *State v. Phillips*, 477 S.W.3d 176, 179 (Mo. App. E.D. 2015)).

Glaze's point on appeal challenges whether the State presented sufficient evidence to prove beyond a reasonable doubt that she "knowingly possessed" the methamphetamine and drug paraphernalia found in the small black bag. "Possessed" is statutorily defined:

[A] person, with the knowledge of the presence and nature of a substance, has actual or constructive possession of the substance. A person has actual possession if he has the substance on his or her person or within easy reach and convenient control. A person who, although not in actual possession, has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it. Possession may also be sole or joint. If one person alone has possession of a substance possession is sole. If two or more persons share possession of a substance, possession is joint . . . .

Section 195.010(34). Thus, to prove the essential element of knowing possession, the State had to prove Glaze's "conscious and intentional possession of the [methamphetamine and drug paraphernalia], either actual or constructive, and awareness of the presence and nature of the [methamphetamine and drug paraphernalia]." *State v. Zetina-Torres*, 482 S.W.3d 801, 807 (Mo. banc 2016) (quoting *State v. Stover*, 388 S.W.3d 138, 146-47 (Mo. banc 2012)). "'Proof of a defendant's knowledge of the presence and character of a substance is normally supplied by circumstantial evidence of the acts and conduct of the accused from which it can be fairly inferred he or she knew of the existence of the contraband.'" *State v.*

7

*Woods*, 284 S.W.3d 630, 639 (Mo. App. W.D. 2009) (quoting *State v. McCleod*, 186 S.W.3d 439, 444 (Mo. App. W.D. 2006)). "Circumstantial evidence is that which does not directly prove a fact in issue but gives rise to a logical inference that the fact exists." *State v. Fox*, 882 S.W.2d 214, 216 (Mo. App. W.D. 1994). "[K]nowledge, awareness, and possession may be proved by circumstantial evidence." *Id.* at 217; *see also Zetina-Torres*, 482 S.W.3d at 807 ("Possession and knowledge may be proved by circumstantial evidence.").

When an unlawful substance or item is found in a location that is exclusively controlled or occupied by a defendant, the defendant is deemed to have knowledge of and control over the substance or item. *Zetina-Torres*, 482 S.W.3d at 807 ("Exclusive control of the premises raises an inference of possession and control of the substance."). However, where an unlawful substance or item is found in a location that is subject to joint occupation or control, "the state is required to demonstrate 'some further evidence or admission connecting the accused with the illegal drugs.'" *Id.* (quoting *State v. Purlee*, 839 S.W.2d 584, 588 (Mo. banc 1992)).

> There are several additional incriminating circumstances that would support an inference of a defendant's knowledge and control of the controlled substance when joint possession exists:
>
> Finding a large quantity of drugs in the vehicle;
>
> Finding drugs having a large monetary value in the vehicle;
>
> Easy accessibility or routine access to the drugs;
>
> The odor of drugs in the vehicle;
>
> The presence of the defendant's personal belongings in close proximity to the drugs;

8

Making false statements in an attempt to deceive the police;

The defendant's nervousness during the search;

The defendant's flight from law enforcement;

The presence of drugs in plain view;

Other conduct and statements made by the accused; and

The fact that the defendant rented the vehicle.

*Zetina-Torres*, 482 S.W.3d at 807 (citing *Stover*, 388 S.W.3d at 147). "These factors . . . , while not exhaustive, guide this Court's analysis of whether additional incriminating circumstances sufficiently connect[] [an accused] to the [contraband] in . . . the car." *Stover*, 388 S.W.3d at 147.

Here, Glaze was a joint occupant in the vehicle. Thus, it is not enough that the black bag filled with contraband was found in the vehicle. Additional incriminating circumstances in the form of evidence or admissions must connect Glaze with the contraband to permit the inference that she had knowledge of and exercised control over the contraband. We find that sufficient evidence was presented to permit this inference.

A sizeable quantity of drugs were found in the black bag--5.58 grams, where only .25 gram is typically associated with getting high through intravenous use. The black bag was easily accessible to Glaze, as it was located in the front floorboard where she was sitting. Glaze thus had superior access to the black bag as between she and the driver of the vehicle. The black bag was not hidden and was visible on the front passenger floorboard. Glaze was looking at the front passenger floorboard when Corporal Mathes initially spoke with the driver. The black bag was on the front passenger floorboard with

9

a purse, food, and beer Glaze admitted were her personal belongings. Glaze's "skin-and-bones" appearance and long-sleeved shirt where consistent with the appearance and dress of an intravenous methamphetamine user. Glaze appeared extremely nervous during the search of the vehicle. Glaze did not react in a surprised manner when she was advised that drugs had been found in the black bag located on the front passenger floorboard amongst her personal belongings.

Given this evidence, "the state met its burden to show additional incriminating circumstances to support an inference of [Glaze's] knowledge and control over the methamphetamine [and drug paraphernalia] after examining the totality of the circumstances." *Zetina-Torres*, 482 S.W.3d at 808. The trial court did not err in overruling Glaze's motion for judgment of acquittal on the basis of insufficient evidence to establish that Glaze possessed the contraband found in the black bag on the front passenger floorboard of the vehicle.

Glaze disagrees. She argues that the additional incriminating circumstances in this case do not permit the reasonable inference that she had knowledge of or exercised control over the contents of the black bag. She relies on *State v. Buford*, 309 S.W.3d 350 (Mo. App. S.D. 2010), for the settled principle that "proximity to . . . contraband, alone, even as to a substance in plain sight, [does not] tend to prove ownership or possession as among several persons who share the premises." *Id.* at 356 (quoting *State v. Bowyer*, 693 S.W.2d 845, 847 (Mo. App. W.D. 1985)); *see also State v. Chavez*, 128 S.W.3d 569, 574 (Mo. App. W.D. 2004) ("The mere fact that [the defendant] was present in the vehicle where the items were found is not sufficient to make a submissible case." (quoting *State v. Bristol*,

10

98 S.W.3d 107, 111 (Mo. App. W.D. 2003))). However, Glaze was not merely present in the vehicle in proximity to the black bag. Instead, as between Glaze and the driver, Glaze had **superior access** to the black bag given it was found in the front passenger floorboard with her admitted personal belongings after she and the driver were simultaneously arrested. *Buford* observed that "[s]uperior access to contraband that is accessible by two or more people is an incriminating fact." 309 S.W.3d at 356 (quoting *State v. Millsap*, 244 S.W.3d 786, 789 (Mo. App. S.D. 2008)). In *Buford*, the court concluded there was no evidence of superior access, though contraband was found near where the accused had been sitting, because a third person in the vehicle had the same access. *Id.* at 361. *Buford* is therefore distinguishable.

Glaze also relies on *Buford* for the settled principle that "[w]hile nervous conduct may be probative of the defendant's awareness of [illegal] drugs, such conduct alone is not sufficient evidence to prove the defendant's unlawful possession." *Id.* at 358 (quoting *State v. Villaneuva*, 147 S.W.3d 126, 130 (Mo. App. W.D. 2004)). But as *Buford* noted, "'[n]ervousness is one incriminating fact that will support a conviction if consistent with the totality of the circumstances.'" *Id.* (quoting *Villaneuva*, 147 S.W.3d at 131). *Buford* found that observed nervousness of the accused was not consistent with the totality of the circumstances where the accused did not have superior access to the contraband located in the vehicle, and where there the defendant had an active warrant out for his arrest. *Id.* at 360-61. *Buford* thus held that "[w]hen a defendant has another equally probable reason for marked nervousness, there must be evidence of an additional incriminating fact before a permissible inference can be drawn [based solely on nervousness] that the defendant had

11

knowledge of and control over the drugs located in the vehicle." *Id.* at 358. Because there was no evidence of an additional incriminating circumstance, *Buford* concluded there was insufficient evidence to support the accused's conviction. *Id.* at 360-62. *Buford* did not hold, however, that nervousness that can be explained by another equally probable reason is irrelevant to the totality of the circumstances. Instead, *Buford* merely reiterated the settled rule that nervousness alone will not support an inference of possession where an accused was a joint occupant in a vehicle, *particularly* where the nervousness can be explained by another equally probable reason. *See, e.g.*, *State v. Franco-Amador*, 83 S.W.3d 555, 559 (Mo. App. W.D. 2002) (addressing nervousness that could be equally explained by an accused's status as an illegal immigrant, which, without evidence of other incriminating factors, could not support a conviction for possession).

Here, there was no evidence of an equally probable reason for Glaze's extreme nervousness during the search of the Jeep SUV. Moreover, Glaze's extreme nervousness was not the only incriminating circumstance supporting the inference that she had knowledge of, and exercised control over, the methamphetamine and drug paraphernalia found in the vehicle. As *Buford* held, "Missouri courts have found sufficient evidence to support a conviction for possession of illegal drugs when the defendant had access to the drugs that was superior to that of the other occupants in the vehicle and there was additional evidence to show that the defendant had exercised some control over the drugs." 309 S.W.3d at 359-60. That additional evidence has included a defendant's personal belongings being found alongside the contraband, *id.* at 361 (citing *Millsap*, 244 S.W.3d at 789), and evidence the defendant was bending toward the area where the drugs are later located. *Id.*

(citing *State v. Ames*, 44 S.W.3d 825, 829 (Mo. App. S.D. 2001). In this case, the totality of the circumstances supports the reasonable inference that Glaze had knowledge of and exercised control over the black bag containing contraband, given it was located in the front floorboard where Glaze had superior access, among her personal belongings, in an area she was looking at the time of initial contact with law enforcement; and given her extreme nervousness during the search of the vehicle.

Glaze's sufficiency of the evidence challenge does not argue that the additional incriminating circumstances, viewed in the totality of the circumstances, fail to support her conviction. Instead, Glaze isolates the incriminating circumstances, and urges a contrary inference that could have been drawn from each circumstance. This tactic ignores our requirement to look at all of the evidence collectively to determine whether the totality of the circumstances supports an inference of guilt. More importantly, this approach is inconsistent with our standard of review, which requires us to view the evidence in the light most favorable to the verdict, disregarding all contrary evidence and reasonable inferences, in order to determine whether "any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt." *Marley*, 598 S.W.3d at 208-09 (quoting *Stewart*, 560 S.W.3d at 533). As *Buford* observed, our standard of review of a challenge to the sufficiency of the evidence must "disregard contrary inferences, unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them." *Id.* at 354 (quoting *State v. Grim*, 854 S.W.2d 403, 411 (Mo. banc 1993)).

*Buford's* reliance on *Grim* is significant. In that case, our Supreme Court "reject[ed] the circumstantial evidence rule as a standard for reviewing the sufficiency of the

13

evidence." *Grim*, 854 S.W.2d at 407. Prior to its abrogation, the circumstantial evidence rule "originated as a higher standard to which circumstantial evidence cases were held." *Id.* at 405. "In its appellate form the [now abrogated] rule was stated: 'Where the conviction rests on circumstantial evidence, the facts and circumstances to establish guilt must be consistent with each other, consistent with the guilt of the defendant, and inconsistent with any reasonable theory of his innocence.'" *Id.* (quoting *State v. Pritchett*, 39 S.W.2d 794, 796-97 (Mo. 1931)). Our Supreme Court recognized, however, that due process requires only that a conviction "be supported by enough evidence that a reasonable juror, taking all evidence in the light most favorable to the State, would be convinced beyond a reasonable doubt," and that the "circumstantial evidence rule" inconsistently turns the inquiry "to whether there exists a reasonable theory of innocence that is consistent with all of the evidence." *Id.* at 406. As a result, our Supreme Court concluded that "[n]o reason remains to perpetuate [the circumstantial evidence] rule." *Id.* Thus, even where a case is built entirely on circumstantial evidence, "[w]e no longer . . . hold circumstantial evidence cases to a higher standard than direct evidence cases. If a jury is convinced beyond a reasonable doubt, so long as the evidence meets the minimal appellate standard required by due process, we need not disturb the result . . . ." merely because the same evidence could have supported an inference of innocence. *Id.*

*Grim*'s abrogation of the circumstantial evidence rule serves as a critical temper in cases involving joint occupants of a vehicle where contraband is found, and where circumstantial evidence is the source of proof that an accused knowingly possessed the contraband. *Grim* instructs that incriminating circumstances must be viewed collectively

14

to determine if the totality of the circumstances meets the minimal appellate standard required by due process to permit an inference of knowing possession beyond a reasonable doubt. Consistent with this principle, our jurisprudence has established that some circumstantial evidence is insufficient **standing alone** to support an inference of knowing possession of contraband found in a vehicle with joint occupants. (*See* discussion, *supra*, regarding a joint occupant's mere presence in a vehicle in proximity to contraband in the absence of superior access to the contraband, and regarding a joint occupant's nervousness during a search in the absence of additional incriminating circumstances). That does not mean, however, that we are permitted to disregard an embodiment of additional incriminating circumstances from which a rational fact-finder could be convinced beyond a reasonable doubt that a joint occupant knowingly possessed contraband found in a vehicle, merely because each circumstance, viewed in isolation, could be subject to an equally plausible theory of innocence. Neither *Buford*, nor any of the other cases cited in *Buford*, nor any case that has since relied on *Buford*, can be read to suggest to the contrary without running afoul of *Grim*'s abrogation of the circumstantial evidence rule.

Glaze's point on appeal is denied.

## Conclusion

The trial court's Judgment is affirmed.

_Cynthia L. Martin_____
Cynthia L. Martin, Judge

All concur